IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2007 FEB 23  P 4: 17

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| CHRIS E. TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO: 3:07cv162-MEF |
| | ) |
| CITY OF AUBURN, a municipality of | ) |
| The State of Alabama; LARRY LANGLEY, | ) |
| an individual; LEE LAMAR, an individual; | ) JURY TRIAL DEMANDED |
| BILL HAM, Jr., an individual; STEVEN A. | ) |
| REEVES, an individual; BILL JAMES, an | ) |
| Individual; DAVID WATKINS,  an individual; | ) |
| CHARLES  M.  DUGGAN, an individual; | ) |
| and CORTEZ LAWRENCE, an individual; | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

### I.    JURISDICTION

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331, 1343;  42

U.S.C. 1983, as amended;  28 U.S.C. 2201 and  2202,  and 42 U.S.C. 2000(e), et seq., Title VII of

the Civil Rights Act of 1964, as amended, and the Fourteenth Amendment of the United States

Constitution.


### II.    PARTIES

2.    Plaintiff, Chris E. Turner, is a citizen of the United States and a permanent resident

1

of the State of Alabama.

3.      Defendant, the City of Auburn, Alabama, is a municipality and governmental entity located in Lee County, Alabama.      Plaintiff has been a full-time employee of Defendant City of Auburn since 1991 as a Firefighter, and presently is employed as a Firefighter-Station Officer and continues to be employed there in this capacity.      Plaintiff began his employment on a full-time basis pursuant to the a 1991 Settlement Agreement, entered pursuant to Order entered in that certain action styled "Hammock  v. The City of Auburn, Alabama, et al.", CV-87-690-E (hereinafter the "1991 Settlement Agreement and the "Hammock Case", respectively), wherein the City of Auburn hired Plaintiff as a full-time Firefighter, pursuant to ¶ 11 of the Order (hereinafter the "1991 Order").  A copy of the 1991 Settlement Agreement is attached hereto and made a part hereof as Exhibit "A".

4.      Defendant City of Auburn is an employer within the meaning of 28 U.S.C. 2000, et seq..   All Defendants are citizens of the United States and permanent residents of the State of Alabama.

5.      Defendant, Larry Langley (hereinafter "Langley"), has been the Chief of the City of Auburn Fire Department since 1997 and has had input and authority as a decision-maker with regard to the facts set forth herein.

6.      Defendant, Lee Lamar (hereinafter "Lamar"), has been the Deputy Chief of the City of Auburn Fire Department since approximately 2003 and has had input and authority as a decision-maker with regard to the facts set forth herein.

7.      Defendant, Steven A. Reeves (hereinafter "Reeves") has been the Human Resource Director of the City of Auburn Fire Department since some time in the 1980's and has had input and

2

authority as a decision-maker with regard to the facts set forth herein.

8.      Defendant, Bill Ham, Jr. (hereinafter "Ham"), has been the Mayor of the City of Auburn since approximately 2000 and has had input and authority as a decision-maker with regard to the facts set forth herein.

9.      Defendant, Bill James (hereinafter "James"), has been the Public Safety Director of the City of Auburn since approximately 2001 and has had input and authority as a decision-maker with regard to the facts set forth herein.   Defendant Cortez Lawrence (hereinafter "Lawrence") is, and at all times pertinent hereto was, the Deputy Public Safety Director of the City of Auburn.

10.      Defendants, David Watkins and Charles M. Duggan (hereinafter "Watkins" and "Duggan", respectively), were the City Managers of the City of Auburn at the time of the promotions identified and described herein and has had input and authority with regard to those promotions.

## III.    STATEMENT OF PLAINTIFF'S CLAIMS:

11.      Plaintiff brings the claims set forth herein pursuant to the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States under § 1983 and Title VII of the Civil Rights Act of 1964.   Plaintiff filed two claims with the EEOC within the one-hundred and eighty day period and has received a Right to Sue Letter for each claim. This action is commenced within    the    required    ninety    day    filing    period.        Copies    of    the Right to Sue Letters are attached hereto and made a part hereof as Exhibits "B" and C". This action is commenced within two years of the actions complained of.

3

**COUNT ONE**

**RACE DISCRIMINATION IN PROMOTION:   August 23, 2005**

12.      On to-wit, February 15, 1991, in the 1991 Order, this Court ordered the Defendant City of Auburn to hire Plaintiff as a full-time Firefighter.   When he was hired, he was a probationary Firefighter for one year.   Plaintiff passed all of the requirements and became a Firefighter I.    He remained a firefighter I for approximately seven years, and then was promoted to Firefighter II, with no pay increase.

13.      Once a probationary Firefighter becomes a permanent Firefighter I, as Plaintiff did, he or she becomes eligible to apply for a Team Leader position.   Plaintiff applied for the Team Leader position each time it became open once he became eligible, which was in 1992, up to the present date.   Plaintiff was never promoted to Team Leader.   Plaintiff is a black male, age 41.   During this time period, the City promoted 21 Whites and one Black to the position of Team Leader.   Plaintiff applied for all of these promotions/positions and received none.

14.      Specifically, on August 23, 2005, Plaintiff applied for the Team Leader position and did not receive the promotion.   The position was given to a white Firefighter.

15.      On August 23, 2005, one opening for a Team Leader Position became available at Fire Station #1.   The position was awarded to Jason Rawls, a white male, within one to two weeks of that date.

4

16.     Additionally, three other white Firefighters were put on a waiting list. From this waiting list, all three white males received promotions to the Team Leader position which became available at various stations. These promotions were parceled out within a few weeks after August 23rd. None of the promotions were awarded to Blacks. Plaintiff was not awarded any of the positions.

17.     Plaintiff was qualified to be a Team Leader because he was a permanent Firefighter II with over a decade of experience and expertise and had met all other Departmental requirements for the position.

18.     Plaintiff has held the positions of Firefighter II, Fire-Officer I, Fire-Instructor, and is certified to command fires until the senior officer arrives on a scene, pursuant to his Incident Command System Certification. Furthermore, Plaintiff has certificates in Apparatus Operator/Pumper, Apparatus Operator/Aerial, Hazardous Materials Incident Commander, Building Construction For Fire Suppression Forces Principles wood and ordinary construction, EMT-Basic, Alabama Forestry Commission (brush fire training), National Wildland/Urban Firefighter Safety Certification, ISI safety, Commercial Drivers Licensing Program, Firefighter Safety and Survival, Emergency Vehicles Operations Course and defensive driving training, as well as thirty-two (32) hours of secondary education in fire-fighting courses.

19.     Plaintiff has been a Station Officer for approximately ten (10) to fifteen (15) years. In 1995, Plaintiff began assuming supervisory responsibilities, as assigned, of all the fire stations. The job of the Station Officer is to manage a station when the Lieutenant is absent. In this position, the Station Officer must interact effectively with team members, senior officers and the public. He

has to instruct, plan, lead, communicate, be safe, manage and supervise. Plaintiff has ten to fifteen years of experience in this position.

20.    Plaintiff was qualified to be a Team Leader on August 23, 2005. Although qualified, he was denied the promotion and the position was kept open and eventually given to white firefighters.

21.    The promotees from the August 23, 2005 position were as follows: David Hines, Jason Rawl, James Gilbert and Clay Carson – all white males.

22.    The 1991 Settlement Agreement specifically provided that promotions to Team Leader did not have to be determined through an outside assessment center, such as was required for filling Lieutenants' and Captains' positions, for the reason that the Team Leader "position" is not a classification as such, but is in fact an additional responsibility of a permanent Firefighter, as set forth more specifically herein below. The position does provide pay and grade as that of Lieutenant.

23.    Thus, the City of Auburn employs the term "Team Leader" to promote white Firefighters to a grade *equal* to that of Lieutenant (Team Leaders were not Lieutenants). Team Leader determinations are made by in various ways, either by appointment from the Fire Chief, inside assessment by the Fire Chief, the Public Safety Director, other Team Leaders, including some former Captains, and sometimes, even by city administrators or merely by informing the permanent Firefighter of a promotion to Lieutenant pay grade (a raise of approximately three hundred dollars a month. These appointees, as stated above, were called Team Leaders, even though the term Team Leader is not an official classification.

24.    Until August 23, 2005, all promotions to Team Leader were handled in the manner set

6

forth above.

25.     Prior to August of 2005, Plaintiff was "passed over" for promotion by Defendants approximately twenty times.     In or about 1994, Plaintiff became eligible for the position of Team Leader.  He never received a promotion.  Normally, Plaintiff was told that the reason he didn't get the job was because he interviewed poorly.     Plaintiff was interviewed many times, often by the same persons,  yet continued to be passed over,  and was always given the same reason – that he "interviewed poorly".  During this period of time, white Firefighters, with less experience, training and communication skills, continued to be promoted over Plaintiff.

26.     Plaintiff's formal evaluations demonstrate that he possesses the requisite knowledge, skills, abilities, and other qualifications needed for successful job performance as a Team Leader. He even performs in his current job, from time to time, the duties of Team Leader and also the higher position of Lieutenant.  By way of example (and consistent with Plaintiff's customary evaluations) is Plaintiff's performance appraisal for March 7, 2006, attached hereto and made a part hereof as Exhibit "D".

27.     In 2002, Plaintiff filed a charge with the Equal Employment Opportunity Commission (hereinafter the "EEOC") arising out of the failure of the City of Auburn to promote him to Team Leader.     Plaintiff was offered the job of Team Leader during settlement negotiations through EEOC.  However, the settlement was never finalized and Plaintiff filed a lawsuit against the City.

28.     Following dismissal of the above lawsuit, the first Team Leader position to become available was August 23, 2005.

29. However, the August 24, 2005 position was not filled following customary procedures utilized in the past.

30.    Following dismissal of the lawsuit, Defendant City of Auburn, in order to continue passing over Plaintiff for promotion, implemented a "written test" for the *first* time for the Team Leader position. The test was racially discriminatory and designed to keep Plaintiff from getting the job. It was an unlawful "cut-off" test, divided into several parts, the first of which was a written test with no questions related to requirements for the Team Leader position. Failure to pass the written test "cut off" the applicant from the remainder of the examinations.

31.    Specific pertinent features of the written portion of the test are as follows:

(1) the written test was designed for application to promotion to Lieutenant, not for the Team Leader position. Team Leaders are not Lieutenants, nor do they have the same duties. The 1991 Settlement Agreement clearly designates the distinctions between Team Leader and Lieutenant.

(2)    The written test was applicable to Lieutenant positions only and had no application to the Team Leader position.

(3)    The application process was composed of five parts, as follows: (1) the written test, as hereinbefore described; (2) various scenarios; (3) writing skills; (4) fire tactics and (5) oral examination. As noted above, the written portion of the test, administered first, functioned as a "cut-off test", precluding the applicant from proceeding further if failed. The written exam was entitled "Examination 702 -- Lieutenant's Exam". The written exam was graded by designated personnel of the City of Auburn and the tests results were

shredded. Plaintiff was not allowed to see his test.

32.    Plaintiff was advised that he failed the written examination and he was not allowed to proceed to the remaining parts of the application process, none of which carried the cut-off characteristics of the "written exam." Furthermore, all portions except the written test were "graded" by the City of Auburn with no objective measurement or standard as to passage or failure. There also was no physical requirement in the testing process, which is a provision of the 1991 Settlement Agreement. Defendant City of Auburn, however, used the physical fitness test in 2006 to deny Bobby Felton, an African-American, a position as a Firefighter with the City of Auburn.

33.    Defendant City of Auburn has not hired a black permanent Firefighter since approximately 1996 and has only promoted two black Firefighters since 1996, manifesting a pattern and practice of avoidance in hiring Blacks. Every African-American promoted since 1974 has been the result of a lawsuit or a pending lawsuit.

34.    No Firefighter has been hired since 1989 from the general public. All Firefighter positions have been filled through a program called the Student Program. Ninety-nine plus percent of the Firefighters employed through the Student Program are white. Students in the program are trained by Team Leaders.

35.    As of this date, Whites are predominant in the Fire Department, in violation of the 1991 Settlement Agreement which states, in ¶ E, that the City may hire student firefighters without regard to the 1991 Order but may not discriminate in its hiring practices based upon race.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

9

A.    Granting Plaintiff an order requiring Defendant to make Plaintiff whole by granting to him the appropriate declaratory relief, compensatory and punitive damages;

B.    Entering a permanent injunction enjoining individual Defendants and Defendant, City of Auburn, its agents, successors, employees, attorneys and those acting in concert therewith from continuing to violate 42 U.S.C. 2000(e); and

C.    Awarding to Plaintiff such other, further or additional relief as justice may require.

## COUNT TWO

### RACE DISCRIMINATION IN PROMOTION:  February 1, 2006

36.    In 1989 Defendant City of Auburn instituted and created a position called the Team Leader Position.  This team leader position was designed (allegedly) to supply leaders to supervise new Firefighters drawn from the student population of Auburn University.  These students were a part of the newly -- and simultaneously -- created program with the Team Leader Position, and were designated the "college student firefighting teams" or members of the Student Firefighter Program. The Team Leader position was created during the pendency of the lawsuit which resulted in the 1991 Settlement Agreement and became a part of that Settlement Agreement.

36.    As previously stated, Plaintiff became proficient in the requirements for the Team Leader Position in 1994 but never received a promotion, including as part of the August 23, 2005 promotions.

37.    The Team Leader position is, and has always been, a Grade 34 position, which is the same grade and pay for a Lieutenant.  However, as stated in a letter to this Court from Defendant

10

Langley, filed January 17, 1990, a copy of which is attached hereto and made a part hereof as Exhibit "E", the Student Team Leaders have no authority or supervisory power over permanent Firefighters. These positions were allegedly created to supervise the student firefighters, provided in the 1991 Settlement Agreement. The Team Leaders did not wear Lieutenant's bars but wore a team leader badge.

38.    Because of these distinctions, the Team Leader Position was not included in the Court's February 15, 1991 Order, as a position that required an outside assessment, as did the Lieutenant and Captain positions (see Order, ¶ 12). A Team Leader promotion came from within, including the promotions of August 23, 2005.

39.    The Student Firefighter Program, as stated above, is composed of students from Auburn University, who attend school and work as Firefighters part-time, according to a court document filed in the Hammock case, a copy of which is attached hereto and made a part hereof as Exhibit "F". According to this document, the Team Leaders were created solely to supervise these student firefighters.

40.    On February 1, 2006, thirteen Team Leaders were "re-classified" (promoted) to the Lieutenant position from "within", meaning there was no outside assessment, in violation of ¶ 12 of the 1991 Order. These re-classifications or promotions were made by Defendant Langley and the other individual defendants on the stated basis that the 1991 Settlement Agreement had expired. The 1991 Settlement Agreement has not expired. Plaintiff objected directly to Chief Langley about these promotions and he was called into the office at the public safety building and had a meeting with Defendant James, the Public Safety Director of the City; Defendant Reeves, the

Human Resource Director of the City; Defendant Langley, the Fire Chief of the City, and others. In that meeting, Plaintiff was told that the 1991 Settlement Agreement had expired and that they were going to petition the court to allow them to change all of the team leaders to lieutenants. Witnesses at this meeting included Walter Allen, Gerald Stevens and Dean Garrett, employees of the Fire Department. No petition was ever filed.

41.    There is no "official" Team Leader position according to the National Fire Protection Association, a national organization for the enhancement for firefighter skills. The Team Leader position was a creation of these Defendants for the purpose of avoiding the 1991 Settlement Agreement by actually using it as a subterfuge to promote Whites to the Lieutenant grade.

42.    Of the thirteen (13) Team Leaders promoted, eight came from the Student Firefighter Program and accordingly all had less seniority than plaintiff.    All of the promotees from the Student Firefighter program were White. Of the thirteen (13) promotions, twelve (12) were white and one was African-American (Eddie Ogletree) and he did not come from the Student Program.

43.    Of the thirteen (13) Team Leaders promoted to Lieutenant, only four had been required to take the August 23, 2005 written test. The other nine had been appointed to Team Leader pursuant to the application process described in ¶ (E) of the 1991 Settlement Agreement.

44.    Pursuant to a court document filed January 17, 1990, Chief Langley has been aware since at least January 17, 1990, that the Team Leader Position was a subterfuge to promote to Lieutenants in violation of the 1991 Settlement Agreement. See Exhibit "E" hereto. According to Defendant Langley, in his letter written to Judge Varner "...I also disagree with the way team leader(s) was [sic] made lieutenant, that wasn't the understanding I had when they started the Student

12

Program".

45.    Plaintiff was qualified to be promoted to the position of Lieutenant. He was by-passed for the Lieutenant's position and white Firefighters were promoted to the position of Lieutenant, without the requirement of an outside assessment. Plaintiff should have been promoted to Team Leader and then upgraded as everyone else.    Defendant City of Auburn's admission that outside assessment centers were not used in connection with Team Leader positions is stated in Defendant Langley's deposition taken in the Hammock Case.    The pertinent excerpt of that deposition transcript is attached hereto and made a part hereof as Exhibit "F".    Plaintiff alleges that the Team Leader position was created to allow Defendant City of Auburn to avoid the court-ordered outside assessment process in promotions to Lieutenant and Captain positions.

46.    Until the 1991 Settlement Agreement, there were 10 - 15 Lieutenants and they were all white. Under the 1991 Settlement Agreement, the defendants were ordered to promote three African-Americans to Lieutenant. After that, no more Lieutenants were promoted. At the time of the February, 2006 promotion, as heretofore described, there remained only one Lieutenant (Gerald Stevens), as all the other lieutenants retired or quit. After February, 2006 thirteen (13) white Firefighters were appointed Lieutenant and one Black was appointed.    See Memorandum titled "Title Change of Company Officer Position", dated January 28, 2006, from Defendant Langley to "All Personnel" which authorizes changing the title of Team Leader to Lieutenant, in violation of the 1991 Settlement Agreement, attached hereto and made a part hereof as Exhibit "G".

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

A.    Entry of an order requiring Defendants to make Plaintiff whole by granting

13

appropriate declaratory relief, compensatory and punitive damages;

B.    Entering a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys and those acting in concert therewith from continuing to violate 42 U.S.C. 2000(e);

C.    Awarding to Plaintiff such other, further and additional relief as justice may require.

## COUNT THREE

### RACE DISCRIMINATION: BATTALION FIRE CHIEF PROMOTION: MAY, 2006

47.    In January, 2005 the City appointed four white captains to the newly created position of Battalion Fire Chief, without any outside assessment, interview or other formal process.    No Blacks were promoted. There has never been a black captain or a black battalion fire chief or any black above the rank of lieutenant, manifesting a pattern and practice to avoid promoting Blacks. Furthermore, the 1991 Settlement Agreement calls for an outside assessment for the promotion to Lieutenant or Captain. The position of Battalion Fire Chief did not exist in 1991. Thus, the City of Auburn, though the battalion position is not mentioned in the 1991 Settlement Agreement, is a rank above Captain, and therefore, under the 1991 Settlement Agreement, should have been awarded by an outside assessment, which it was not.


48.  When another Battalion Fire Chief job became available in May, 2006, Plaintiff applied for the position.  Instead of awarding the position in the same manner as the first battalion position, Defendant City of Auburn returned to the same testing procedures used in the August 23rd promotion

14

and again Plaintiff failed to make the cut-off and therefore was not allowed to take the rest of the examination.    Two other African-Americans also applied and they also were cut off and the three positions went to Whites.

49.    Although a cut-off score was used to eliminate Plaintiff and other Blacks form the positions to which Whites were promoted, the other applicants were not required to comply with the Physical Fitness Plan, as ordered by the Court pursuant to the 1991 Settlement Agreement, which would have eliminated all of them.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

A.    Entry of an order requiring Defendants to make Plaintiff whole by granting appropriate declaratory relief, compensatory and punitive damages;

B.    Entering a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys and those acting in concert therewith from continuing to violate 42 U.S.C. 2000(e);

C.    Awarding to Plaintiff such other, further and additional relief as justice may require.

**COUNT FOUR**

**RETALIATION**

50.    Plaintiff reaffirms each and every allegation set forth above, the same as if stated herein.

51.    Plaintiff alleges that he was a plaintiff in the Hammock Case, which incorporated the 1991 Settlement Agreement.    It was through that settlement that Plaintiff was hired.    Plaintiff

15

became a probationary Firefighter for one year. He passed his probation and became a permanent Firefighter in March of 1992. In 1994 he became eligible for promotion to Team Leader. Since that time, to the present, he has been passed over at least twenty times, as heretofore stated.

52.     Plaintiff alleges that he filed an EEOC complaint alleging race discrimination in 2003 and was offered the position of Team Leader during the process of the EEOC investigation and negotiations. However, Plaintiff turned down the offer and filed an action for race discrimination, which was dismissed for reasons heretofore stated.

53.     Plaintiff alleges that he has engaged in statutorily protected expression(s); he has suffered adverse employment action(s), which adverse action(s) was causally related to the protected expressions.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

A.     Entry of an order requiring Defendants to make Plaintiff whole by granting appropriate declaratory relief, compensatory and punitive damages;

B.     Entering a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys and those acting in concert therewith from continuing to violate 42 U.S.C. 2000(e);

C.     Awarding to Plaintiff such other, further and additional relief as justice may require.

**COUNT FIVE**

**DISPARATE IMPACT**

54.     Plaintiff reaffirms each and every allegation set forth above as if set forth herein.

16

55.    Plaintiff alleges that the above employment practices, as administered by the defendants, have a substantial adverse impact on a protected group, namely, African-Americans.

56.    Plaintiff alleges that the practices are discriminatory in operation, though the Defendants will maintain that they are fair in form.  Plaintiff alleges that the employment procedure(s) and/ or testing mechanisms operate as a "built-in headwind" for minority groups and are unrelated to measuring job capability.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests the following relief:

A.  Entering an order requiring Defendants to make Plaintiff whole by granting appropriate declaratory relief, compensatory and punitive damages; and

B.  Entering a permanent injunction enjoining Defendant City of Auburn, its agents, successors, employees, attorneys and those acting in concert therewith from continuing to violate 42 U.S.C. 2000(e).

C.  Awarding to Plaintiff such other, further and additional relief as justice may require.

**PLAINTIFF REQUESTS A TRIAL BY JURY**

**RESPECTFULLY SUBMITTED** on this the 23rd day of February, 2007.

**JEFFREY W. BENNITT**
**ASB N51J (BEN 004)**

Of Counsel:

Jeff Bennitt & Associates, LLC
P.O. Box 383063
Birmingham, Al   35238-3063
Suite 3A 4898 Valleydale Rd., Birmingham, Al 35242

17

(205) 408-7240
fax: (205) 408-9236
e-mail: Bennittlaw@aol.com

PLAINTIFF'S ADDRESS:

c/ Jeff Bennitt & Associates

**WANDA D. DEVEREAUX**
**ASB 7244-v45w   (DEV 001)**

Of Counsel:

Devereaux & Associates, LLC
2800 Zelda Road, Suite 200-2
Montgomery, AL  36106
(334) 396-5006
fax (334) 396-3774
e-mail:  wdd@devxllc.com

**ATTORNEYS FOR PLAINTIFF**

By _____

**WANDA D. DEVEREAUX**

Defendants to be served by Process Server.

18

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

FEB 15 1991

THOMAS ... COVER CLERK

| | |
|---|---|
| CLINTON W. HAMMOCK, et al., | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| | ) CV-87-680-E |
| vs. | ) |
| | ) |
| | ) |
| THE CITY OF AUBURN, et al., | ) |
| Defendants. | ) |

## ORDER APPROVING SETTLEMENT AGREEMENT

On this the 1st day of February, 1991, at 9:00 A.M., the day and date set for the Fairness Hearing on the proposed Settlement Agreement in the above case, the parties appeared in Open Court. Several written objections to the Settlement Agreemnet had been filed, which the Court considered. The attorneys for the parties, namely Arnold W. Umbach, Jr., attorney for the City of Auburn, Hon. Stephen R. Glassroth, attorney for the past and present white firefighters, Hon. Deborah H. Biggers, attorney for the past, present and future black firefighters, and Hon. Dudley Perry, Jr., attorney for the white future firefighters, appeared in Court and represented to this Court that the proposed Settlement Agreement represented a compromise by all parties and all attorneys recommended the Settlement Agreement to the Court on behalf of their clients. The Court gave an opportunity to all class members present to express any opinions which they might have regarding the

EOD 2-15-91

**EXHIBIT      A**

proposed Settlement Agreement and no member of the class spoke. The Court is therefore of the opinion that the proposed Settlement Agreement should be approved and it is

ORDERED, as follows:

1. That the Settlement Agreement dated November, 1990, submitted to this Court is hereby approved and all parties are hereby directed to implement the terms and conditions of said Notice of Proposed Class Settlement.

2. That the matters involving the attorneys' fee for Perry & Perry is reserved for future decision by this Court.

3. That a copy of this Order be mailed postage prepaid or hand-delivered by the Clerk of this Court to the following:

Arnold W. Umbach, Jr.
Walker, Hill, Adams,
   Umbach, Meadows & Walton
Attorneys for the City of Auburn
P. O. Box 2069
Opelika, AL 36803-2069

Hon. Stephen R. Glassroth
P. O. Box 910
Montgomery, AL 36102

Hon. Deborah H. Biggers
P. O. Box 1258
Tuskegee, AL 36083

Hon. Dudley Perry, Jr.
111 Washington Avenue
Montgomery, AL 36104

ENTERED this ___15th___ day of February, 1991.

ROBERT E. VARNER, District Judge

EXHIBIT    A     -2-

FILED

NOV 14 1990

THOMAS C. CAVER

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CLINTON W. HAMMOCK, et al.,           )
                                       )
            Plaintiffs,                )
                                       )
                                       )   CV-87-680-E
vs.                                    )
                                       )
THE CITY OF AUBURN, et al.,            )
                                       )
            Defendants.                )

## NOTICE OF PROPOSED CLASS SETTLEMENT

TO:  Former, Present, and Future Employees of
     the City of Auburn Fire Department who
     are members of the Plaintiff Class in
     Civil Action No. 87-V-680-E

A lawsuit pending in this Court, Civil Action No.
87-V-680-E involving a claim by Clinton W. Hammock and others
against the City of Auburn, Jan M. Dempsey, Mayor of the City of
Auburn; Tejeda, Personnel Manager for the City of Auburn; the
City Council of the City of Auburn, Robert Gastaldo, Samuel
Harris, Mary Fortenberry, Sam Teague, Lamar Sellers, Frances W.
Hale, W. G. "Trey" Johnston, and Bill Ham, Jr., was settled
pursuant to a Notice of Proposed Class Settlement, which, if you
are a member of the class, you should have received on or about
August 22, 1988.  Since the settlement of this class action
suit, several issues have been brought before this Court
concerning the enforcement of the provisions of the settlement
decree.  Currently pending before this Court are objections of

EXHIBIT C

1

EXHIBIT   A

Dexter Card and William Felton To Proposed Settlement of Class Action, Objections of Members of Subclass of Past, Present, and Future Black Firemen, and Response of the Class Consisting of Present and Future Auburn Firefighters to the Order to Show Cause of February 16, 1990, all filed by class counsel.

The purpose of this notice is to advise you of the status of proposed settlement of all issues involved.

Subject to the approval of the Court the Plaintiffs and the Defendants have agreed on a settlement of the issues.  The terms of agreement are in the Memorandum of Understanding which states:

## MEMORANDUM OF UNDERSTANDING

1.  **STUDENT FIREFIGHTERS.** Within thirty days the City will issue a statement restating in substance those matters set forth in the plan submitted on February 3, 1989, (the Plan) to the U. S. District Court in this case and indicating, among other things, the following:

A.  That the Student Firefighters are not Regular Firefighters.  "Regular Firefighters" includes all permanent full-time Firefighters except Student Firefighters.

B.  The Student Firefighters and their leaders are all under the direct supervision and control of the Fire Chief and the officers of the fire department.  Student Firefighters have



no control or authority over any Regular Firefighters at any time.

C.  The Student Firefighters do not automatically become Regular Firefighters but may, of course, apply for the position of a Regular Firefighter in the event such position becomes available.  The Student Firefighters are not eligible for any promotions within the fire department except for the promotion to student positions within the Student Firefighters section.

D.  The Student Firefighters may be used as deemed appropriate by the City.  When the Career Firefighters arrive, the Senior Career Fire Officer or his designee shall assume command immediately upon their arrival.  All Student Firefighters and Career Firefighters shall work together to carry out the directions and instructions of the Senior Career Fire Officer or his designee.  In the event that a third firestation is built by the City, the City may make a determination to use Student Firefighters to man the third firestation.

E.  No parties challenge the selection process of student team leaders.  In addition all parties agree that the City's obligation to hire black Firefighters does not apply to Student Firefighters and the City may hire Student Firefighters without regards to said Order but may not, of course, discriminate in its hiring practices based upon race.

EXHIBIT    A

3

2.    **KENNETH RIDLEY AND THOMAS SCOTT.**    Within thirty days from the approval of this settlement, the City shall pay both Mr. Ridley and Mr. Scott from November 17, 1988, until the date of their re-hiring by the City of Auburn.    Said sum shall be treated as compensation with the appropriate withholding and deductions.    In addition, if the City has not reinstated Mr. Ridley and Mr. Scott at their previous seniority level, including their prior grade and step, with the same accumulated vacation days and sick leave days as of the date of their last employment with the City prior to 1989, the City shall do so within 30 days of the approval of this settlement and shall issue a written statement to be placed in their personnel file, stating that the seniority, vacation days and sick leave has been so reinstated.

3.    **CAFETERIA PLAN.**    Within thirty days, the City will obtain from the Administrator of the City's Cafeteria Plan a statement indicating all reserves, including cash reserves and other reserves, available to any Firefighter, and a complete accounting of the disposition or transfer of any such cash reserves.    Further, the City will joint with Plaintiffs to assist the Firefighter in obtaining all benefits to which they are entitled under the Cafeteria Plan, and under all insurance policies within such Cafeteria plan, and under all insurance policies within such cafeteria plan to which the Plaintiffs have

**EXHIBIT    A**    4

made payments, and to be sure that the Cafeteria Plan has been administered in accordance with applicable regulations.

4. BILL PELTON. In addition to the above matters pertaining to the City's Cafeteria Plan, within thirty days, the City will furnish to Mr. Felton a statement of his plan and determine whether inappropriate deductions have been made from his paycheck and whether certain benefits are due. If it is determined that benefits are due to him or that inappropriate deductions have been made the City will cooperate to require the insurance company to fulfill its obligations.

5. CAREER PLAN. Within thirty days from the approval of this settlement, the City will modify the Career Plan currently submitted to the Court in this matter so that all deadlines set forth therein are extended for one year past the previous deadlines set forth in said Career Plan. In addition, no Firefighters shall be required to sit for nor pass the Firefighter II examination given by the State of Alabama. All Firefighters must, however, complete all training for the Firefighter II certification as given by the City of Auburn and pass all practical tests and examinations given by the City, whether written or oral which relate to said training. So long as each Firefighter is making a good faith effort to successfully complete the tests and examinations, each Firefighter shall be allowed the opportunity to take such tests and examinations as many times as may reasonably be required in

# EXHIBIT    A

order to pass. All Firefighters, even those who do not pass the State Firefighter II certification, will be required to take additional training as required by the Career Plan, with said training to include but not be limited to Fire Apparatus Operator training. The exemption to the requirement for the Firefighter II certification shall apply to Chris Turner referred to in Paragraph 11 below, but shall not apply to any Fire Officer, present or future, nor to any Firefighter hired after the date of this Agreement. In addition, all Firefighters understand and acknowledge that the failure to obtain the Firefighter II certification probably will affect future raises, promotions and job tasks.

City shall have the right to delete courses and requirements from the Career Plan if in the judgment of the City such requirements are no longer needed or required. City shall also have the right to amend the Career Plan to reflect future state or federal requirements and change in the mission of the Fire Division.

- All other matters set forth in said Career Plan shall be approved by all parties and can immediately be implemented by the City.

The City shall amend the job descriptions in the Career Development Plan if necessary, so that said job descriptions correctly reflect the actual job tasks performed by each position with the Fire Division of the Department of Public



EXHIBIT    A

Safety of the City and are consistent with the current job descriptions for each position in the Fire Division of the Department of Public Safety of the City.

Upon approval of this Settlement Agreement by the Court and the Class, the Career Plan will be amended to be consistent with the changes set forth herein.

6. PHYSICAL FITNESS PLAN. The City shall modify the Physical Fitness Plan currently submitted to the Court so that by adopting Section 2-3.1 of the Physical Fitness Plan required by the National Fire Protection Association, NFPA 1001 Firefighter Professional Qualifications, 1987 Edition, so that the criterion reference norms set forth in the Physical Fitness Plan shall be as follows:

## CRITERION REFERENCE NORMS

| Field Test | Males | Females |
|---|---|---|
| Percent Body Fat | max 19%-25% age related | max 23%-29% age related |
| Sit ups | min 30 | min 30 |
| Sit and Reach | min 23 cm | min 23 cm |
| Step test | Good level based on age (See Table B.4) | Good level based on age (See Table B.5) |

# EXHIBIT A

7

Each Firefighter shall complete one of the following:

|  | Males | | Females | |
|---|---|---|---|---|
| 1 1/2 mile run | under 30 | 13:00 min | under 30 | 13:00 min |
|  | 30-39 | 13:00 min | 30-39 | 13:00 min |
|  | 40-49 | 14:00 min | 40-49 | 14:00 min |
|  | over 50 | 14:30 min | over 50 | 14:30 min |
| Walk 3 miles |  | 38 min |  | 38 min |
| Bicycle 4 miles |  | 12 min |  | 12 min |
| Swim 500 yards | 8 min 20 seconds | | 8 min 20 seconds | |
| Run in Place 75 steps per minute |  | 15 min |  | 15 min |
| Run on a motorized horizontal treadmill 10 miles per hour |  | 6 min |  | 6 min |

The Physical Fitness Plan currently submitted to this Court with the above modifications shall be approved and the City may immediately implement said Plan.

  

8

7.  **WELDON AND FORTNER.** The City will in good faith attempt to convince the Retirement Systems of the State of Alabama to accept its contributions on behalf of Mr. Weldon and Mr. Fortner in accordance with the previous order of this Court. It is the understanding of the parties that such attempt, if necessary, will include litigation on behalf of Mr. Weldon and Mr. Fortner. The City shall proceed in good faith to promptly obtain such ruling.

8.  **SICK LEAVE.** The City represents that it has included in the Sick Leave Plan submitted to the Court in this matter a statement indicating that co-employees will not check on other employees regarding sick leave. If requested, the City will issue a further statement to this affect.

9.  **WALTER ALLEN.** Within thirty days, the City will grant Mr. Allen two vacation days in exchange for two sick leave days.

10. **MINIMUM PERMANENT FIREFIGHTER STAFFING.** For a period of seven years from October 1, 1990, the City shall maintain 33 permanent Firefighters which 33 permanent ~~Firefighters shall include the Fire Chief, Deputy Chiefs,~~ Captains, Lieutenants, Student Team Leaders and Firefighters. In addition, the City agrees to maintain within said minimum number of 33 Permanent Firefighters, six Captains and six Lieutenants. The City may, in its sole discretion and with the consent of the Fire Officer, use the Fire Officers (Lieutenants


EXHIBIT          A

9

and Captains) as student team leaders without having to replace the Fire Officers. This commitment by the City shall expire on October 1, 1997.

11. **BLACK FIREFIGHTERS.** Upon the execution of this Agreement, the City agrees to hire Chris Turner as a Probational Firefighter for a period of one year, and if Chris Turner completes all of the requirements for a Permanent Firefighter, which shall include the 240 hours of training required by the State of Alabama, passing the required physical examination by Dr. Jimmy Mathews and satisfactorily complying with all of the rules and regulations of the Fire Division during the one-year period, he may become a Permanent Firefighter within the one-year period. In such event the City shall retain Chris Turner as a Permanent Firefighter, subject to the rules and regulations of the Fire Division of the Public Safety Department of the City including all provisions of the Career Plan. Mr. Turner shall <u>not</u> be required to sit for nor pass the Firefighter II examination given by the State of Alabama. He must, however, complete all training for the Firefighter II certification as given by the City of Auburn and pass all practical tests and examinations given by the City, whether written or oral, which relate to said training. If Mr. Turner does not complete all of the requirements to become a Permanent Firefighter within the one-year period, the City shall not be obligated to retain him. In addition, the City agrees that the next two Regular

  

10

Firefighters hired by the City shall be black Firefighters. These Firefighters shall be hired when the City next hires Regular Firefighters.

12. **ASSESSMENT CENTER.** The City has submitted to this Court an Assessment Center which shall be approved by the Court and implemented by the City for use in the promotion of Lieutenants and Captains with the Fire Division. Notwithstanding any language to the contrary contained in the City of Auburn Assessment Center Candidate Orientation Manual, all promotions subject to Assessment Center involvement shall be made by promoting the candidate rated Number 1 by the Assessment Center for each such promotion.

13. **BILL FELTON AND JESSIE STRICKLAND.** Immediately upon the execution of this Agreement, the City shall promote Bill Felton and Jessie Strickland to Lieutenant and shall pay to Bill Felton and Jessie Strickland within thirty days thereof, back pay at Grade 34, Step 10 from March 1, 1990, until the date of promotion by the City. The City shall not be required to promote any other individual to the rank of Lieutenant, whether or not any individual has applied for the position of Lieutenant prior to the date of this Agreement.

14. **DAY.** The day will be defined as follows: For Firefighters on a 56-hour work week, 10.6 hours per month will be earned for all employees hired after February 3, 1989. For full-time Firefighters who work a 56-hour week and were hired



11

prior to February 3, 1989, annual leave shall be earned based on one 24-hour shift per month. For all personnel of the Fire Division not on the 56-hour week, adjustments will be made accordingly.

15. **RETALIATION PROHIBITED.** The City shall not retaliate against any member of the class.

16. **ENTIRE AGREEMENT.** This Settlement Agreement expresses the entire agreement between the parties hereto, whether oral or written, and incorporates herein all other matters agreed upon by the parties in the settlement of this lawsuit.

## General

1. The City shall be provided Full and Final Releases from all individuals adverse to the City in Clinton W. Hammock, et al. vs. City of Auburn, Civil Action No. CV-87-V-680, specifically releasing the City and all individuals it so chooses of any and all liability or obligations of any kind in connection with the events which are the basis of said lawsuit. This lawsuit shall then be dismissed with prejudice and the Plaintiffs shall bear their own costs.

2. **ATTORNEY'S FEES.** The matter involving any attorney fees due to Perry & Perry is reserved by the Court for final decision after hearing evidence thereon. The City shall pay to

 

12

Deborah Hill Biggers the sum of $15,000.00 and shall pay to the law firm of Kendrick and Glassroth the sum of $10,000.00.

## SETTLEMENT HEARING

The Court will hold a hearing in the United States District Courthouse in Montgomery, Alabama, on _February 1, 1991_ , at _9:00_ A.M., to determine whether, as recommended by both class counsel, it should approve the proposed settlement.

Objections to the proposed settlement by class members will b. considered by the Court but only if such objections are filed in writing with the Court on or before _January 15, 1991_ . Attendance at the hearing is not necessary; however, class members wishing to be heard orally in opposition to the proposed settlement should indicate in their written objection their intention to appear at the hearing.

Class members who support the proposed settlement do not need to appear at the hearing or take any other action to indicate their approval

## FURTHER PROCEEDINGS

If the settlement is approved by the Court, the entire Memorandum of Understanding will be put into effect and the entire amount of damages, including fees, costs and expenses,

# EXHIBIT    A

13

will be paid to the Clerk of this Court, who will make
distribution in accord with the terms of the Memorandum of
Understanding.

If settlement is not approved, the motions and other
matters will be prepared for judicial resolution of the claims
and defenses concerning this Courts prior order and the other
matters.

## ADDITIONAL INFORMATION

Any questions you have about the matters in this notice
should not be directed to the Court, but may be directed by
telephone or letter to:

Deborah Hill Biggers
113 East Northside
Tuskegee, AL  36083

Stephen R. Glassroth
Kendrick and Glassroth
505 South Perry Street
P. O. Box 910
Montgomery, AL  36101-0910

or

Robert T. Meadows, III or
Arnold W. Umbach, Jr.,
Attorneys for the Defendant, the City of
Auburn, Mayor Jan Dempsey, Douglas Watson,
Ron Tejeda, and the Members of the City
Council of the City of Auburn
Walker, Hill, Adams, Umbach & Meadows
P. O. Box 2069
Opelika, AL  36803-2069
Telephone:  (205) 745-6466

EXHIBIT    A

14

You may, of course, seek the advice and guidance of your own attorney if you desire. The pleadings and other records in this litigation, including a complete copy of the proposed settlement agreement, may be examined and copied at any time during regular office hours at the office of the Clerk, Federal Courthouse, Montgomery, Alabama.

### REMINDER AS TO TIME LIMITS

If you wish to object to the proposed settlement, file your written objections with the Clerk of the Court on or before January 15, 1991            . Include any request to be heard orally at the hearing.

DATED:  February 14, 1990

THOMAS C. CAVER, Clerk
United States District Court for
    the Middle District of Alabama
P. O. Box 711
Montgomery, AL  36101

EXHIBIT     A

15



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
5068 8547

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

December 1, 2006

Mr. Chris E. Turner
c/o Jeffrey W. Bennitt, Esquire
Law Office of Bennitt & Assocs.
Attorneys at Law
4898 Valleydale Rd., Ste. A3
Birmingham, AL  35242

Re:  EEOC Charge Against City of Auburn
     No. 420200600113

Dear Mr. Turner:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,

                         Wan J. Kim
                 Assistant Attorney General
                    Civil Rights Division

                by   *Karen L. Ferguson*

                     Karen L. Ferguson
                 Supervisory Civil Rights Analyst
                 Employment Litigation Section


cc:  Birmingham District Office, EEOC
     City of Auburn



# EXHIBIT    B



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5068 8547

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

December 1, 2006

Mr. Chris E. Turner
c/o Jeffrey W. Bennitt, Esquire
Law Office of Bennitt & Assocs.
Attorneys at Law
4898 Valleydale Rd., Ste. A3
Birmingham, AL 35242

Re:  EEOC Charge Against City of Auburn
      No. 420200603288

Dear Mr. Turner:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Wan J. Kim
Assistant Attorney General
Civil Rights Division

by   *Karen L. Ferguson*
      Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc:  Birmingham District Office, EEOC
      City of Auburn

# EXHIBIT   C

Firefighter

PART III PERFORMANCE DISCUSSION AND SUMMARY

Does the employee report for and remain at work as required? Yes X ☐No   If no, please explain:

Does the employee follow instructions and observe work rules and personnel policies? Yes X ☐No   If no, please explain:

Does the employee interact effectively with co-workers on the job? Yes X ☐No   If no, please explain:

Does the employee perform the job in compliance with safety practices appropriate to assigned work environment? (Office, construction site, police patrol, etc.)  Yes X ☐No  If no, please explain:

Does the employee exhibit proper respect for and use of City property? Yes X ☐No  If no, please explain:

Does the employee have the knowledge, skills, abilities, and other qualifications needed for successful job performance?   Yes X☐No  If no, please explain:

Describe any specific actions employee needs to take to improve job performance:
Continue to use his experience to train newly promoted firefighters.

Summarize this employee's overall job performance:
 Chris does an outstanding job as a firefighter for the City of Auburn.  He is willing to perform all duties assigned by a supervisor.  In addition, he is one of the most reliable employees to call if there is a shift shortage and personnel are needed to work for the day.  Chris recently completed his State Firefighter Instructor I Certification and is willing to take an active roll in the Fire Division Training Program.  Chris continues to work to improve and continuously seeks ways to advance to the next rank.  In conclusion, he is an experienced and highly motivated employee that is an asset to the City of Auburn.

PART IV SIGNATURES

| This report is based on my observation and knowledge of both the employee and the job. | My signature indicates that I have reviewed this appraisal. It does not mean that I agree with the results. |
|---|---|
| _(signature)_         3/7/06 | _(signature)_         3/7/06 |
| Supervisor              Date | Employee                Date |
| _(signature)_         3/6/06 | |
| Reviewer               Date | |
| 3-8-06 | |

# EXHIBIT    D

To. Judge Robert Varner

I object to the Settlement Dudley Perry has
agree to settle for. Dudley Perry Action at the
meeting office was uncall for. Mr. Perry said
he would not settle this case hisself & we
had no say in the matter. Mr. Perry has
told us we would be Grandfather concerning
schooling & Physical fitting, but the agreement
he had was not like that. Mr. Perry has
done nothing to stop the harasement from
city officals. We were not allow to
set in on negotiations, but Alan Ledbetter
was allow to set in on his. I disagree with
the promotion of Jessie Strickland & Bill Felton
to Lieutenant. I also disagree with the way
Team leader was made Lieutenant, that was not
the understanding I had when they started the
Student Program. I have had no say in
the concerning this Prospal & Therefore I must
object to the Prospal.

Your Respectfly
Larry Langley

RECEIVED
FILED
JAN 17 1990
THOMAS C. CAVER, CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF ALA.
CLERK
U.S. DIST. COURT
MIDDLE DIST. OF AL
DEPUTY CLERK, BY CO

**EXHIBIT    E**

**American Court Reporting**
toll-free (877) 320-1050

1    Q.    Isn't it a fact that the

2    reason you created team leader is to get

3    around having to do the assessment center?

4    A.    Right.  Because it's cheaper

5    and for us to do an assessment center

6    every time we have a team leader -- I

7    mean, a -- well, a team leader is open.

8    It cost so much for us to put one on, and

9    it's cheaper for us to do a team leader

10   position than it is to hire an outside

11   agency to come in and put on an assessment

12   center.

13   Q.    Has there ever been a

14   recommendation to your knowledge made to

15   the City to do assessment centers to

16   select team leaders?

17   A.    No.

18   Q.    Now, yesterday you testified

19   that you remember telling Chris that the

20   process was unfair to him.

21   MR. MORGAN:  No.  Object

22   to the form.

23   Q.    (BY MR. TINNEY)  Well, what

# EXHIBIT    F