## UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

June 6, 2007

# NOTICE OF CORRECTION

**From:**                    **Clerk's Office**

**Case Style:**              **Chris E. Turner v. City of Auburn, et al.**

**Case Number:**             **#3:07-cv-00162-MEF**

**Referenced Document:**     **Document #16**
                             **First Motion to Amend/Correct Complaint**

**This notice has been docketed to enter the proposed Amended Complaint into the record as an attachment to the referenced document.**

**The pdf of the proposed Amended Complaint is attached to this notice.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **CHRIS E. TURNER,** | ) |
| **EDDIE OGLETREE,** | ) |
| **GERALD STEPHENS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **CIVIL ACTION NO: 3:07cv162-MEF** |
| | ) |
| **CITY OF AUBURN, a municipality of** | ) |
| **The State of Alabama; LARRY LANGLEY,** | ) |
| **an individual; LEE LAMAR, an individual;** | ) **JURY TRIAL DEMANDED** |
| **BILL HAM, Jr., an individual; STEVEN A.** | ) |
| **REEVES, an individual; BILL JAMES, an** | ) |
| **Individual; DAVID WATKINS, an individual;** | ) |
| **CHARLES M. DUGGAN, an individual;** | ) |
| **and CORTEZ LAWRENCE, an individual;** | ) |
| | ) |
| **Defendants.** | ) |

**FINAL AMENDED COMPLAINT**

**PART ONE**

**I.    JURISDICTION**

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331, 1343; 42

U.S.C. 1983, as amended; 28 U.S.C. 2201 and 2202, and 42 U.S.C. 2000(e), et seq., Title VII of

the Civil Rights Act of 1964, as amended, and the Fourteenth Amendment of the United States

Constitution.

**II.    PARTIES**

1

2.     Plaintiff, Chris E. Turner, is a citizen of the United States and a permanent resident of the State of Alabama.

3.     Defendant, the City of Auburn, Alabama, is a municipality and governmental entity located in Lee County, Alabama.     Plaintiff has been a full-time employee of Defendant City of Auburn since 1991 as a Firefighter, and presently is employed as a Firefighter-Station Officer and continues to be employed there in this capacity.     Plaintiff began his employment on a full-time basis pursuant to the a 1991 Settlement Agreement, entered pursuant to Order entered in that certain action styled "Hammock  v. The City of Auburn, Alabama, et al.", CV-87-690-E (hereinafter the "1991 Settlement Agreement and the "Hammock Case", respectively), wherein the City of Auburn hired Plaintiff as a full-time Firefighter, pursuant to ¶ 11 of the Order (hereinafter the "1991 Order").  A copy of the 1991 Settlement Agreement is attached hereto and made a part hereof as Exhibit "A".

4.     Defendant City of Auburn is an employer within the meaning of 28 U.S.C. 2000, et seq..   All Defendants are citizens of the United States and permanent residents of the State of Alabama.

5.     Defendant, Larry Langley (hereinafter "Langley"), has been the Chief of the City of Auburn Fire Department since 1997 and has had input and authority as a decision-maker with regard to the facts set forth herein.

6.     Defendant, Lee Lamar (hereinafter "Lamar"), has been the Deputy Chief of the City of Auburn Fire Department since approximately 2003 and has had input and authority as a decision-maker with regard to the facts set forth herein.

2

7.      Defendant, Steven A. Reeves (hereinafter "Reeves") has been the Human Resource Director of the City of Auburn Fire Department since some time in the 1980's and has had input and authority as a decision-maker with regard to the facts set forth herein.

8.      Defendant, Bill Ham, Jr.  (hereinafter "Ham"),  has been the Mayor of the City of Auburn since approximately 2000 and has had input and authority as a decision-maker with regard to the facts set forth herein.

9.      Defendant, Bill James (hereinafter "James"), has been the Public Safety Director of the City of Auburn since approximately 2001 and has had input and authority as a decision-maker with regard to the facts set forth herein.   Defendant Cortez Lawrence (hereinafter "Lawrence") is, and at all times pertinent hereto was,  the Deputy Public Safety Director of the City of Auburn.

10.      Defendants, David Watkins and Charles M. Duggan (hereinafter "Watkins" and "Duggan", respectively), were the City Managers of the City of Auburn at the time of the promotions identified and described herein and has had input and authority with regard to those promotions.


III.     **STATEMENT OF PLAINTIFF'S CLAIMS:**

11.      Plaintiff brings the claims set forth herein pursuant to the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States under § 1983 and Title VII of the Civil Rights Act of 1964.   Plaintiff filed two claims with the EEOC within the one-hundred and eighty day period and has received a Right to Sue Letter for each claim.  This action is commenced within the required ninety day filing period.  Copies of the

3

Right to Sue Letters are attached hereto and made a part hereof as Exhibits "B" and C". This action is commenced within two years of the actions complained of.

## COUNT ONE

### RACE DISCRIMINATION IN PROMOTION:  August 23, 2005

12.     On  to-wit, February 15, 1991, in the 1991 Order, this Court ordered the Defendant City of Auburn to hire Plaintiff as a full-time Firefighter.  When he was hired, he was a probationary Firefighter for one year.  Plaintiff passed all of the requirements and became a Firefighter I.   He remained a firefighter I for approximately seven years, and then was promoted to Firefighter II, with no pay increase.

13.     Once a probationary Firefighter becomes a permanent Firefighter I, as Plaintiff did, he or she becomes eligible to apply for a Team Leader position.  Plaintiff applied for the Team Leader position each time it became open once he became eligible, which was in 1992, up to the present date.    Plaintiff was never promoted to Team Leader.   Plaintiff is a black male, age 41. During this time period, the City promoted 21 Whites and one Black to the position of Team Leader. Plaintiff applied for all of these promotions/positions and received none.

14.     Specifically, on August 23, 2005, Plaintiff applied for the Team Leader position and did not receive the promotion.   The position was given to a white Firefighter.

15.     On August 23, 2005, one opening for a Team Leader Position became available at Fire Station #1.   The position was awarded to Jason Rawls, a white male, within one to two weeks of that date.

4

16.     Additionally, three other white Firefighters were put on a waiting list.  From this waiting list, all three white males received promotions to the Team Leader position which became available at various stations.  These promotions were parceled out within a few weeks after August 23rd.   None of the promotions were awarded to Blacks.   Plaintiff was not awarded any of the positions.

17.     Plaintiff was qualified to be a Team Leader because he was a permanent Firefighter II with over a decade of experience and expertise and had met all other Departmental requirements for the position.

18.      Plaintiff has held the positions of Firefighter II,  Fire-Officer I,  Fire-Instructor, and is certified to command fires until the senior officer arrives on a scene,  pursuant to his Incident Command System Certification.   Furthermore, Plaintiff has certificates in Apparatus Operator/Pumper, Apparatus Operator/Aerial, Hazardous Materials Incident Commander, Building Construction For Fire Suppression Forces Principles wood and ordinary construction, EMT-Basic, Alabama Forestry Commission (brush fire training), National Wildland/Urban Firefighter Safety Certification, ISI safety, Commercial Drivers Licensing Program, Firefighter Safety and Survival, Emergency Vehicles Operations Course and defensive driving training, as well as thirty-two (32) hours of secondary education in fire-fighting courses.

19.     Plaintiff has been a Station Officer for approximately ten (10) to fifteen (15) years. In 1995, Plaintiff began assuming supervisory responsibilities, as assigned,  of all the fire stations. The job of the Station Officer is to manage a station when the Lieutenant is absent.  In this position, the Station Officer must interact effectively with team members, senior officers and the public.  He

has to instruct, plan, lead, communicate, be safe, manage and supervise. Plaintiff has ten to fifteen years of experience in this position.

20.    Plaintiff was qualified to be a Team Leader on August 23, 2005.    Although qualified, he was denied the promotion and the position was kept open and eventually given to white firefighters.

21.    The promotees from the August 23, 2005 position were as follows:  David Hines, Jason Rawl, James Gilbert and Clay Carson – all white males.

22.    The 1991 Settlement Agreement specifically provided that promotions to Team Leader did not have to be determined through an outside assessment center, such as was required for filling Lieutenants' and Captains' positions, for the reason that the Team Leader "position" is not a classification as such, but is in fact an additional responsibility of a permanent Firefighter, as set forth more specifically herein below.   The position does provide pay and grade as that of Lieutenant.

23.    Thus, the City of Auburn employs the term "Team Leader" to promote white Firefighters to a grade *equal* to that of Lieutenant (Team Leaders were not Lieutenants).  Team Leader determinations are made by in various ways,  either by appointment from the Fire Chief, inside assessment by the Fire Chief, the Public Safety Director, other Team Leaders, including some former Captains, and sometimes, even by city administrators or merely by informing the permanent Firefighter of a promotion to Lieutenant pay grade (a raise of approximately three hundred dollars a month.  These appointees, as stated above, were called Team Leaders, even though the term Team Leader is not an official classification.

6

24.     Until August 23, 2005, all promotions to Team Leader were handled in the manner set forth above.

25.     Prior to August of 2005, Plaintiff was "passed over" for promotion by Defendants approximately twenty times.     In or about 1994, Plaintiff became eligible for the position of Team Leader.  He never received a promotion.  Normally, Plaintiff was told that the reason he didn't get the job was because he interviewed poorly.     Plaintiff was interviewed many times, often by the same persons,  yet continued to be passed over,  and was always given the same reason – that he "interviewed poorly".  During this period of time, white Firefighters, with less experience, training and communication skills, continued to be promoted over Plaintiff.

26.     Plaintiff's formal evaluations demonstrate that he possesses the requisite knowledge, skills, abilities, and other qualifications needed for successful job performance as a Team Leader.  He even performs in his current job, from time to time, the duties of Team Leader and also the higher position of Lieutenant.  By way of example (and consistent with Plaintiff's customary evaluations) is Plaintiff's performance appraisal for March 7, 2006, attached hereto and made a part hereof as Exhibit "D".

27.     In 2002, Plaintiff filed a charge with the Equal Employment Opportunity Commission (hereinafter the "EEOC") arising out of the failure of the City of Auburn to promote him to Team Leader.   Plaintiff was offered the job of Team Leader during settlement negotiations through EEOC.  However, the settlement was never finalized and Plaintiff filed a lawsuit against the City.

28.     Following dismissal of the above lawsuit, the first Team Leader position to become

7

available was August 23, 2005.

29.  However, the August 24, 2005  position was not filled following customary procedures utilized in the past.

30.     Following dismissal of the lawsuit,  Defendant City of Auburn, in order to continue passing over Plaintiff for promotion,  implemented a "written test" for the *first* time for the Team Leader position.  The test was racially discriminatory and designed to keep Plaintiff from getting the job.  It was an unlawful "cut-off" test, divided into several parts, the first of which was a written test with no questions related to requirements for the Team Leader position.  Failure to pass the written test "cut off" the applicant from the remainder of the examinations.

31.     Specific pertinent features of the written portion of the test are as follows:

(1) the written test was designed for application to promotion to Lieutenant, not for the Team Leader position.  Team Leaders are not Lieutenants, nor do they have the same duties.  The 1991 Settlement Agreement clearly designates the distinctions between Team Leader and Lieutenant.

(2)     The written test was applicable to Lieutenant positions only and had no application to the Team Leader position.

(3)     The application process was composed of five parts, as follows:   (1) the written test, as hereinbefore described;  (2) various scenarios;  (3) writing skills;  (4) fire tactics and  (5) oral examination.   As noted above, the written portion of the test, administered first, functioned as a "cut-off test", precluding the applicant from proceeding

8

further if failed. The written exam was entitled "Examination 702 -- Lieutenant's Exam". The written exam was graded by designated personnel of the City of Auburn and the tests results were shredded. Plaintiff was not allowed to see his test.

32.    Plaintiff was advised that he failed the written examination and he was not allowed to proceed to the remaining parts of the application process, none of which carried the cut-off characteristics of the "written exam."  Furthermore, all portions except the written test were "graded" by the City of Auburn with no objective measurement or standard as to passage or failure. There also was no physical requirement in the testing process, which is a provision of the 1991 Settlement Agreement.  Defendant City of Auburn, however, used the physical fitness test in 2006 to deny Bobby Felton, an African-American, a position as a Firefighter with the City of Auburn.

33.    Defendant City of Auburn has not hired a black permanent Firefighter since approximately 1996 and has only promoted two black Firefighters since 1996, manifesting a pattern and practice of avoidance in hiring Blacks.       Every African-American promoted since 1974 has been the result of a lawsuit or a pending lawsuit.

34.    No Firefighter has been hired since 1989 from the general public. All Firefighter positions have been filled through a program called the Student Program.  Ninety-nine plus percent of the Firefighters employed through the Student Program are white.   Students in the program are trained by Team Leaders.

35.    As of this date, Whites are predominant in the Fire Department, in violation of the 1991 Settlement Agreement which states, in ¶ E, that the City may hire student firefighters without

regard to the 1991 Order but may not discriminate in its hiring practices based upon race.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

A.    Granting Plaintiff an order requiring Defendant to make Plaintiff whole by granting to him the appropriate declaratory relief, compensatory and punitive damages;

B.    Entering a permanent injunction enjoining individual Defendants and Defendant, City of Auburn, its agents, successors, employees, attorneys and those acting in concert therewith from continuing to violate 42 U.S.C. 2000(e); and

C.    Awarding to Plaintiff such other, further or additional relief as justice may require.

## COUNT TWO

### RACE DISCRIMINATION IN PROMOTION:   February 1, 2006

36.    In 1989 Defendant City of Auburn instituted and created a position called the Team Leader Position.   This team leader position was designed (allegedly) to supply leaders to supervise new Firefighters drawn from the student population of Auburn University.  These students were a part of the newly -- and simultaneously -- created program with the Team Leader Position, and were designated the "college student firefighting teams" or members of the Student Firefighter Program. The Team Leader position was created during the pendency of the lawsuit which resulted in the 1991 Settlement Agreement and became a part of that Settlement Agreement.

36.    As previously stated, Plaintiff became proficient in the requirements for the Team

Leader Position in 1994 but never received a promotion, including as part of the August 23, 2005 promotions.

37.    The Team Leader position is, and has always been, a Grade 34 position, which is the same grade and pay for a Lieutenant. However, as stated in a letter to this Court from Defendant Langley, filed January 17, 1990, a copy of which is attached hereto and made a part hereof as Exhibit "E", the Student Team Leaders have no authority or supervisory power over permanent Firefighters. These positions were allegedly created to supervise the student firefighters, provided in the 1991 Settlement Agreement. The Team Leaders did not wear Lieutenant's bars but wore a team leader badge.

38.    Because of these distinctions, the Team Leader Position was not included in the Court's February 15, 1991 Order, as a position that required an outside assessment, as did the Lieutenant and Captain positions (see Order, ¶ 12). A Team Leader promotion came from within, including the promotions of August 23, 2005.

39.    The Student Firefighter Program, as stated above, is composed of students from Auburn University, who attend school and work as Firefighters part-time, according to a court document filed in the Hammock case, a copy of which is attached hereto and made a part hereof as Exhibit "F". According to this document, the Team Leaders were created solely to supervise these student firefighters.

40.    On February 1, 2006, thirteen Team Leaders were "re-classified" (promoted) to the Lieutenant position from "within", meaning there was no outside assessment, in violation of ¶ 12 of the 1991 Order. These re-classifications or promotions were made by Defendant Langley and

the other individual defendants on the stated basis that the 1991 Settlement Agreement had expired. The 1991 Settlement Agreement has not expired. Plaintiff objected directly to Chief Langley about these promotions and he was called into the office at the public safety building and had a meeting with Defendant James, the Public Safety Director of the City; Defendant Reeves, the Human Resource Director of the City; Defendant Langley, the Fire Chief of the City, and others. In that meeting, Plaintiff was told that the 1991 Settlement Agreement had expired and that they were going to petition the court to allow them to change all of the team leaders to lieutenants. Witnesses at this meeting included Walter Allen, Gerald Stevens and Dean Garrett, employees of the Fire Department. No petition was ever filed.

41. There is no "official" Team Leader position according to the National Fire Protection Association, a national organization for the enhancement for firefighter skills. The Team Leader position was a creation of these Defendants for the purpose of avoiding the 1991 Settlement Agreement by actually using it as a subterfuge to promote Whites to the Lieutenant grade. 42.

Of the thirteen (13) Team Leaders promoted, eight came from the Student Firefighter Program and accordingly all had less seniority than plaintiff. All of the promotees from the Student Firefighter program were White. Of the thirteen (13) promotions, twelve (12) were white and one was African-American (Eddie Ogletree) and he did not come from the Student Program.

43. Of the thirteen (13) Team Leaders promoted to Lieutenant, only four had been required to take the August 23, 2005 written test. The other nine had been appointed to Team Leader pursuant to the application process described in ¶ (E) of the 1991 Settlement Agreement.

44.    Pursuant to a court document filed January 17, 1990,  Chief Langley has been aware since at least January 17, 1990, that the Team Leader Position was a subterfuge to promote to Lieutenants in violation of the 1991 Settlement Agreement.  See Exhibit "E" hereto.   According to Defendant Langley, in his letter written to Judge Varner "...I also disagree with the way team leader(s) was [sic] made lieutenant, that wasn't the understanding I had when they started the Student Program".

45.    Plaintiff  was qualified to be promoted to the position of Lieutenant.  He was by-passed for the Lieutenant's position and white Firefighters were promoted to the position of Lieutenant, without the requirement of an outside assessment.  Plaintiff should have been promoted to Team Leader and then upgraded as everyone else.    Defendant City of Auburn's admission that outside assessment centers were not used in connection with Team Leader positions is stated in Defendant Langley's deposition taken in the Hammock Case.     The pertinent excerpt of that deposition transcript is attached hereto and made a part hereof as Exhibit "F".  Plaintiff alleges that the Team Leader position was created to allow Defendant City of Auburn to avoid the court-ordered outside assessment process in promotions to Lieutenant and Captain positions.

46.    Until the 1991 Settlement Agreement, there were 10 - 15 Lieutenants and they were all white.  Under  the 1991 Settlement Agreement, the defendants were ordered to promote three African-Americans to Lieutenant.  After that, no more Lieutenants were promoted.  At the time of the February, 2006 promotion, as heretofore described, there remained only one Lieutenant (Gerald Stevens), as all the other lieutenants retired or quit.  After February, 2006 thirteen (13) white Firefighters were appointed Lieutenant and one Black was appointed.    See Memorandum titled

"Title Change of Company Officer Position", dated January 28, 2006, from Defendant Langley to "All Personnel" which authorizes changing the title of Team Leader to Lieutenant, in violation of the 1991 Settlement Agreement, attached hereto and made a part hereof as Exhibit "G".

       **WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

       A.     Entry of an order requiring Defendants to make Plaintiff whole by granting appropriate declaratory relief, compensatory and punitive damages;

       B.     Entering a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys and those acting in concert therewith from continuing to violate 42 U.S.C. 2000(e);

       C.     Awarding to Plaintiff such other, further and additional relief as justice may require.

## COUNT THREE

### RACE DISCRIMINATION: BATTALION FIRE CHIEF PROMOTION: MAY, 2006

       47.     In January, 2005 the City appointed four white captains to the newly created position of Battalion Fire Chief, without any outside assessment, interview or other formal process.    No Blacks were promoted.  There has never been a black captain or a black battalion fire chief or any black above the rank of lieutenant, manifesting a pattern and practice to avoid promoting Blacks. Furthermore, the 1991 Settlement Agreement calls for an outside assessment for the promotion to Lieutenant or Captain.  The position of Battalion Fire Chief did not exist in 1991.  Thus, the City of Auburn, though the battalion position is not mentioned in the 1991 Settlement Agreement, is a rank  above Captain, and therefore, under the 1991 Settlement Agreement, should have been

awarded by an outside assessment, which it was not.

48.  When another Battalion Fire Chief job became available in May, 2006, Plaintiff applied for the position.  Instead of awarding the position in the same manner as the first battalion position, Defendant City of Auburn returned to the same testing procedures used in the August 23rd promotion and again Plaintiff failed to make the cut-off and therefore was not allowed to take the rest of the examination.   Two other African-Americans also applied and they also were cut off and the three positions went to Whites.

49.     Although a cut-off score was used to eliminate Plaintiff and other Blacks form the positions to which Whites were promoted,  the other applicants were not required to comply with the Physical Fitness Plan, as ordered by the Court pursuant to  the 1991 Settlement Agreement, which would have eliminated all of them.

**WHEREFORE, PREMISES  CONSIDERED**,  Plaintiff prays for the following relief:

A.     Entry of an order requiring Defendants to make Plaintiff whole by granting appropriate declaratory relief, compensatory and punitive damages;

B.     Entering a  permanent  injunction  enjoining  Defendants,  its  agents, successors, employees, attorneys and those acting in concert therewith from continuing to violate  42 U.S.C. 2000(e);

C.     Awarding to Plaintiff such other, further and additional relief as justice may require.

## COUNT FOUR

## RETALIATION

50.     Plaintiff reaffirms each and every allegation set forth above, the same as if stated herein.

51.     Plaintiff alleges that he was a plaintiff in the Hammock Case, which incorporated the 1991 Settlement Agreement.   It was through that settlement that Plaintiff was hired.  Plaintiff became a probationary Firefighter for one year.  He passed his probation and became a permanent Firefighter in March of 1992.  In 1994 he became eligible for promotion to Team Leader.  Since that time, to the present, he has been passed over at least twenty times, as heretofore stated.

52.     Plaintiff alleges that he filed an EEOC complaint alleging  race discrimination in 2003 and was offered the position of Team Leader during the process of the EEOC investigation and negotiations.   However, Plaintiff turned down the offer and filed an action for race discrimination, which was dismissed for reasons heretofore stated.

53.     Plaintiff alleges that he has engaged in statutorily protected expression(s); he has suffered adverse employment action(s), which adverse action(s) was causally related to the protected expressions.

**WHEREFORE, PREMISES  CONSIDERED**, Plaintiff prays for the following relief:

A.     Entry of an order requiring Defendants to make  Plaintiff  whole by granting appropriate declaratory relief, compensatory and punitive damages;

B.     Entering a  permanent  injunction enjoining Defendants,  its agents, successors,

16

employees, attorneys and those acting in concert therewith from continuing to violate  42 U.S.C. 2000(e);

C.     Awarding to Plaintiff such other, further and additional relief as justice may require.

## COUNT FIVE

### DISPARATE IMPACT

54.     Plaintiff reaffirms each and every allegation set forth above as if set forth herein.

55.     Plaintiff alleges that the above employment practices, as administered by the defendants, have a substantial adverse impact on a protected group, namely, African-Americans.

56.     Plaintiff alleges that the practices are discriminatory in operation, though the Defendants will maintain that they are fair in form.   Plaintiff alleges that the employment procedure(s) and/ or testing mechanisms operate as a "built-in headwind" for minority groups and are unrelated to measuring job capability.

**WHEREFORE, PREMISES  CONSIDERED**,  Plaintiff requests the following relief:

A.  Entering an order requiring Defendants to make  Plaintiff whole by granting appropriate declaratory relief, compensatory and punitive damages; and

B.   Entering  a permanent injunction enjoining Defendant City of Auburn, its agents, successors, employees, attorneys and those acting in concert therewith from continuing to violate 42 U.S.C. 2000(e).

C.  Awarding to Plaintiff such other, further and additional relief as justice may require.

### PLAINTIFF REQUESTS A TRIAL BY JURY

**RESPECTFULLY SUBMITTED** on this the 23rd day of February, 2007.

/**s**/ Jeff Bennitt

**JEFFREY W. BENNITT**
**Counsel for Chris Turner**
**ASB N51J (BEN 004)**

Of Counsel:

Jeff Bennitt & Associates, LLC
P.O. Box 383063
Birmingham, Al    35238-3063
Suite 3A 4898 Valleydale Rd., Birmingham, Al 35242
(205) 408-7240
fax: (205) 408-9236
e-mail: Bennittlaw@aol.com

PLAINTIFF'S ADDRESS:

c/ Jeff Bennitt & Associates

/s/ Wanda Devereaux

**WANDA D. DEVEREAUX**
**Counsel for Chris Turner**
**ASB 7244-v45w   (DEV 001**)

Of Counsel:

Devereaux & Associates, LLC
2800 Zelda Road, Suite 200-2
Montgomery, AL  36106
(334) 396-5006
fax (334) 396-3774
e-mail:  **wdd@devxllc.com**

18

## PART TWO

**I**                                                                                          .

**JURISDICTION**

1                                                                                              .

Additional Plaintiffs, Eddie Ogletree and Gerald Stephens, through counsel,

hereby adopt the jurisdictional paragraph asserted in the original filed Complaint as above

styled.

**I**                                                        **I**                              .

**PARTIES**

2                                                                                              .

The Plaintiff adopts the description of the parties asserted in the original filed

Complaint as above styled.  Additionally, the amended Plaintiff, Eddie Ogletree, is an African

American citizen of the United States and a permanent resident of the state of Georgia.  The

amended Plaintiff, Gerald Stephens, is an African American citizen of the United States and a

permanent resident of the state of Alabama.

**I**                                **I**                                **I**                 .

**STATEMENT OF THE PLAINTIFF'S CLAIMS**

3                                                                                              .

The amended Plaintiffs, Eddie Ogletree and Gerald Stephens, adopt the first

sentence of the statement of Plaintiff's claims asserted in the original filed Complaint as above

styled.  The amended Plaintiffs have filed two individual charges with the Equal Employment

Opportunity Commission within the 180 day period as required by law.  The Equal Employment

Opportunity Commission issued a determination for each of the amended Plaintiffs that

evidence established reasonable cause to believe violations of the statute occurred as alleged.

The Plaintiffs EEOC charges and determination letters are attached respectively as Exhibits (A),

(B), (C) and (D).

**COUNT ONE**
**RACE DISCRIMINATION IN PROMOTION: August 23, 2005**

4                                                                                                          .
Inasmuch as this Count relates specifically to the Plaintiff Chris E. Turner, it is

mostly inapplicable to the amended Plaintiffs Eddie Ogletree and Gerald Stephens.  The

amended Plaintiffs do adopt any and all allegations related to and describing the Defendants'

pattern and practice of race discrimination in promotion and hiring during the past and present.

The amended Plaintiffs further adopt all allegations in this count related to this Court's 1991

Order and the 1991 Settlement Agreement.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

A                                                                                                          .
Granting Plaintiff an Order requiring Defendant to make Plaintiff whole by granting to him the
appropriate declaratory relief, compensatory and punitive damages;

B                                                                                                          .
Entering a permanent injunction enjoining individual Defendants and Defendant, City of Auburn,
its agents, successors, employees, attorneys and those acting therewith from continuing to violate
42 U.S.C. 2000(e); and

C                                                                                                          .
Awarding to Plaintiff such other, further or additional relief as justice may require.

**COUNT TWO**
**RACE DISCRIMINATION IN PROMOTION: February 1, 2006**

5.
The Amended Plaintiffs adopt the general allegations alleged in Count One of the

original filed Complaint as above styled.

6.

The Plaintiff, Gerald Stephens, in February 2006 was a lieutenant with The City

of Auburn Fire Department.  At that time, he applied for a promotion from lieutenant to the

position of Battalion Chief (Captain).

7.

Prior to February 2006, only nine probationary lieutenants were allowed to apply

for the position of Battalion Chief.  However, in February 2006, The City of Auburn changed its

policies to allow any firefighter, including entry level firefighters, to apply for the Battalion

Chief position.

8.

During this same period of time, The City of Auburn Fire Department changed its

policies to require applicants for Battalion Chief to pass a written test.  Coincidentally, these

policy changes occurred at a time when two African American lieutenants and one entry level

African American firefighter became eligible for the position of Battalion Chief.  Seniority

within the department was discarded as a criteria for promotion to the Battalion Chief position.

9.

Gerald Stephens was denied the promotion to Battalion Chief in April 2006.  The

denial of the promotion was racially based.  At the time of Gerald Stephens' application, there

were three Battalion Chief positions available, and each position was filled by a Caucasian team

leader (lieutenant).  Each of the applicants that were awarded the Battalion Chief position had

less seniority and experience than Gerald Stephens.

10.

Caucasian applicants for the Battalion Chief position were given preferential

treatment regarding the application process, test aids and test grades.  The policy changes and

21

preferential treatment towards Caucasian applicants combined to cause the denial of Gerald

Stephens' application for promotion to Battalion Chief in April 2006.

11.

The City of Auburn has violated, and continues to this day to violate a Federal

Court Order requiring them to alter hiring and promotion policies and procedures in order to

provide equitable treatment to African Americans.  Despite this Federal Court Order and

settlement, The City of Auburn has intentionally changed its policies and procedures to exclude

African Americans from the hiring and promotion process.

12.

Gerald Stephens filed a grievance against The City of Auburn and followed the

grievance administration process to its completion.  In 2006, The City of Auburn affirmed its

decision not to promote Gerald Stephens of Battalion Chief.

13.

The amended Plaintiff Eddie Ogletree has served The City of Auburn Fire

Department for more than twenty two years.

14.

The Plaintiff, Eddie Ogletree, in February 2006, was a lieutenant with The City of

Auburn Fire Department.  At that time, he applied for a promotion from lieutenant to the position

of Battalion Chief (Captain).

15.

Prior to February 2006, only nine probationary lieutenants were allowed to apply

for the position of Battalion Chief.  However, in February 2006, The City of Auburn changed its

policies to allow any firefighter, including entry level firefighters, to apply for the Battalion Chief

position.

16.

During this same period of time, The City of Auburn Fire Department changed its

policies to require applicants for Battalion Chief to pass a written test.  Coincidentally, these

policy changs occurred at a time when two African American lieutenants and one entry level

African American firefighter became eligible for the position of Battalion Chief.  Seniority

within the department was discarded as a criteria for promotion to the Battalion Chief position.

17.

Eddie Ogletree was denied the promotion to Battalion Chief in April 2006.  The

denial of the promotion was racially based.  At the time of Eddie Ogletree's application, there

were three Battalion Chief positions available, and each position was filled by a Caucasian team

leader (lieutenant).  Each of the applicants that were awarded the Battalion Chief position had

less seniority and experience than Eddie Ogletree.

18.

Caucasian applicants for the Battalion Chief position were given preferential

treatment regarding the application process, test aids and test grades.  The policy changes and

preferential treatment towards Caucasian applicants combined to cause the denial of Eddie

Ogletree's application for promotion to Battalion Chief in April 2006.

19.

The City of Auburn has violated, and continues to this day to violate a Federal

Court Order requiring them to alter hiring and promotion policies and procedures in order to

provide equitable treatment to African Americans.  Despite this Federal Court Order and

settlement, The City of Auburn has intentionally changed its policies and procedures to exclude

23

African American's from the hiring and promotion process.

20.

Eddie Ogletree filed a grievance against The City of Auburn and followed the

grievance administration process to its completion.  In 2006, The City of Auburn affirmed its

decision not to promote Eddie Ogletree of Battalion Chief.

21.

The amended Plaintiffs specifically adopt herein Count II paragraphs 36-46 of the

original filed Complaint as above styled.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

A.

Granting Plaintiff an Order requiring Defendant to make Plaintiff whole by granting to him the
appropriate declaratory relief, compensatory and punitive damages;
B.

Entering a permanent injunction enjoining individual Defendants and Defendant, City of
Auburn, its agents, successors, employees, attorneys and those acting therewith from continuing
to violate 42 U.S.C. 2000(e); and

C.

Awarding to Plaintiff such other, further or additional relief as justice may require.

**COUNT THREE**
**RACE DISCRIMINATION: BATTALION FIRE CHIEF PROMOTION: May, 2006**

22.

The amended Plaintiffs adopt herein Count III paragraphs 47-49.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

A.

Granting Plaintiff an Order requiring Defendant to make Plaintiff whole by granting to him the
appropriate declaratory relief, compensatory and punitive damages;

B.

Entering a permanent injunction enjoining individual Defendants and Defendant, City of

24

Auburn, its agents, successors, employees, attorneys and those acting therewith from continuing to violate 42 U.S.C. 2000(e); and

C.
Awarding to Plaintiff such other, further or additional relief as justice may require.

## COUNT FOUR
## RETALIATION

23.
The Plaintiffs adopt and reaffirm all previous allegations set forth herein and

further state:

24.
The amended Plaintiffs have engaged in statutorily protected expressions such as

filing Equal Employment Opportunity Charges and grievances against The City of Auburn Fire

Department.  As a result, the amended Plaintiffs have been denied further consideration for job

promotions.

25.
The Defendant City of Auburn has engaged in adverse employment actions

causally related to the Plaintiffs' protected expressions which constitutes retaliation.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

A.
Granting Plaintiff an Order requiring Defendant to make Plaintiff whole by granting to him the appropriate declaratory relief, compensatory and punitive damages;

B.
Entering a permanent injunction enjoining individual Defendants and Defendant, City of Auburn, its agents, successors, employees, attorneys and those acting therewith from continuing to violate 42 U.S.C. 2000(e); and

C.
Awarding to Plaintiff such other, further or additional relief as justice may require.

25

**COUNT FIVE**
**DISPARATE IMPACT**

26.
Amended Plaintiffs adopt herein Count V paragraphs 54-56.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief:

A.
Granting Plaintiff an Order requiring Defendant to make Plaintiff whole by granting to him the appropriate declaratory relief, compensatory and punitive damages;

B.
Entering a permanent injunction enjoining individual Defendants and Defendant, City of Auburn, its agents, successors, employees, attorneys and those acting therewith from continuing to violate 42 U.S.C. 2000(e); and

C.
Awarding to Plaintiff such other, further or additional relief as justice may require.

**PLAINTIFF REQUESTS A TRIAL BY JURY**


/s/ Richard F. Horsley
**Richard F. Horsley (HOR023)**
**Attorney for Plaintiffs:**
**Gerald Stephens & Eddie Ogletree**




**OF COUNSEL:**
**GOOZEE, KING & HORSLEY, LLP**
**1 Metroplex, Suite 280**
**Birmingham, AL 35209**
**Telephone: (205) 871-1310**
**Facsimile:  (205) 871-1370**
**E-mail:  rfhala@cs.com**

/s/ Jeff Bennitt

26

**JEFFREY W. BENNITT**
**Counsel for Chris Turner**
**ASB N51J (BEN 004)**

Of Counsel:

Jeff Bennitt & Associates, LLC
P.O. Box 383063
Birmingham, Al    35238-3063
Suite 3A 4898 Valleydale Rd., Birmingham, Al 35242
(205) 408-7240
fax: (205) 408-9236
e-mail: Bennittlaw@aol.com

PLAINTIFF'S ADDRESS:

c/ Jeff Bennitt & Associates


/s/ Wanda Devereaux

**WANDA D. DEVEREAUX**
**Counsel for Chris Turner**
**ASB 7244-v45w   (DEV 001**)

Of Counsel:

Devereaux & Associates, LLC
2800 Zelda Road, Suite 200-2
Montgomery, AL  36106
(334) 396-5006
fax (334) 396-3774
e-mail:  **wdd@devxllc.com**

CERTIFICATE OF SERVICE

I certify that all attorneys of record have been notified by e-file on this the 5th day of June, 2007..


/s/ Jeff Bennitt
_____

Jeff Bennitt