IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS E. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:07-cv-162-MEF |
| | ) | |
| CITY OF AUBURN, | ) | (WO) |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Chris Turner ("Plaintiff") filed a Complaint (Doc. #1) on February 23, 2007, bringing claims of race discrimination, retaliation, and disparate impact against City of Auburn ("Defendant") relating to his employment as a firefighter. Pursuant to 42 U.S.C. § 1983 ("section 1983"), Plaintiff alleges that he has been denied rights created by federal statutes and by the United States Constitution. Plaintiff also alleges race discrimination, retaliation, and disparate impact pursuant to 42 U.S.C. § 2000e, *et seq* ("Title VII"). Plaintiff seeks declaratory relief, compensatory damages, punitive damages, equitable relief, costs, and attorneys' fees. This cause is before the Court on Defendant's Motion for Summary Judgment (Doc. # 91) filed on September 19, 2008. In this motion, Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish a *prima facie* case or meet his burden under the *McDonnell Douglas* framework on any of his claims. The Court agrees that Plaintiff cannot meet his burden of proof and

finds that the motion for summary judgment is due to be GRANTED for the reasons set forth in this Memorandum Opinion and Order.

## II. JURISDICTION AND VENUE

Jurisdiction over Plaintiff's federal claims is proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).  The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both personal jurisdiction and venue.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in

support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## IV. FACTS

The Court has carefully considered all documents, declarations and affidavits submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

3

**A. The Parties**

Plaintiff is an African American male.  Defendant is a municipality and governmental entity located in Lee County, Alabama.  Defendant employed Plaintiff as a full-time firefighter in 1991.  Plaintiff asserts numerous claims against Defendant relating to his employment including race discrimination, retaliation, and disparate impact.

**B. 1991 Settlement Agreement**

In 1991, Plaintiff was a class member in a race discrimination lawsuit against Defendant.  There, the parties resolved the suit by entering into a settlement agreement ("Settlement Agreement").  The Settlement Agreement obligated Defendant to hire Plaintiff as a full-time firefighter.  Plaintiff was a probationary firefighter for one year and then became a permanent firefighter in 1992.  The Settlement Agreement also required that Defendant use an outside assessment center for filling Lieutenants' positions and Captains' positions.  It did not require that Defendant use outside assessment for filling Team Leader positions.  As a result, Defendant could fill Team Leader positions using its own internal assessment.

**C. Team Leader Promotion August 23, 2005**

In 1989, Defendant created the position of Team Leader to supervise college student firefighters drawn from Auburn University.  Defendant used a structured interview procedure to fill Team Leader positions.  Under this procedure, applicants interviewed, role played, or acted as a judge in a hypothetical scenarios.  In August of

4

2005, Defendant for the first time used a written exam entitled "Examination 702 – Lieutenant's Exam" ("Team Leader exam") to fill a Team Leader position.  Defendant purchased the Team Leader exam from International Public Management Association for Human Resources.  Under Defendant's new promotion procedure, a Team Leader applicant had to score a minimum of seventy points on the Team Leader exam in order to proceed with the application process.  Plaintiff complained to Fire Chief Larry Langley ("Langley") before and after taking the Team Leader exam that he thought it was racially discriminatory.

Nevertheless, Plaintiff was qualified to apply for a Team Leader position, and in August of 2005, Plaintiff applied.  Several other firefighters also applied for the position. In total, six applicants sat for the Team Leader exam.  Two individuals, a Caucasian male named Walter Allen ("Allen") and Plaintiff, both failed to score seventy points on the Team Leader exam.  The other four applicants, all Caucasian males, scored greater than seventy points on the Team Leader exam and progressed to the next stage in the promotional process.  David Hines received the Team Leader promotion on August 23, 2005, and the other three applicants who passed the Team Leader exam ("eligible applicants") were placed on a hiring list.  Nine months later in May of 2006, three new Team Leader positions opened at a new fire station.  The Defendant awarded the jobs to the eligible applicants on the hiring list who had applied for a Team Leader position in August of 2005 and scored greater than seventy points on the Team Leader Exam.

Neither Plaintiff nor Allen were awarded a Team Leader position.

**D. Lieutenant Reclassification February 1, 2006**

On February 28, 2005, thirteen Team Leaders petitioned Langley to be reclassified as Lieutenants. Team Leaders had equal pay and were the same grade as Lieutenants. Over time, the job responsibilities of Team Leaders and Lieutenants became identical. However, Team Leaders wore a team leader badge and did not wear Lieutenant's bars. Team Leaders felt their morale was affected by not having a recognized rank and asked Langley to give them Lieutenant's titles. Legal counsel advised Defendant that reclassifying Team Leaders as Lieutenants would not violate the Settlement Agreement if Defendant made a full disclosure to all affected persons. Therefore, Defendant asked class members of the earlier lawsuit to agree to an amendment of the Settlement Agreement that would allow for a reclassification. Three class members, including Plaintiff, objected to the amendment. On February 1, 2006, thirteen Team Leaders were reclassified as Lieutenants. No one except the Team Leaders became Lieutenants as a result of the reclassification. Four of the Team Leaders became Lieutenants without outside assessment. One Team Leader that Defendant reclassified to a Lieutenant was an African-American male.

**E. Charge of Discrimination**

On January 8, 2006, Plaintiff signed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). By signing the Charge

of Discrimination, Plaintiff declared under penalty of perjury that his statements in the

charge were true and correct.  In the charge, Plaintiff complained of discrimination on the

basis of race.  Plaintiff stated that Defendant promoted Caucasian firefighters to Team

Leader positions but did not promote him because of his race.  Plaintiff also complained

of retaliation.

**F. Alleged Discriminatory, Retaliatory and Disparate Impact Conduct**

In this lawsuit, Plaintiff contends that he was discriminated against on the basis of

his race when he was not promoted to Team Leader on August 23, 2005.  He also alleges

that he was discriminated against when he was not promoted to Lieutenant on February 1,

2006.  Additionally, Plaintiff claims that Defendant unlawfully retaliated against him for

being a party to the Settlement Agreement and filing a Charge of Discrimination with the

EEOC on January 8, 2006.  Furthermore, Plaintiff alleges that Defendant's employment

practices are unlawful under disparate impact theory.

**G. The Lawsuit**

On February 23, 2007, Plaintiff filed suit in this Court.  Plaintiff seeks declaratory

and equitable relief as well as damages for alleged discrimination on the basis of race,

retaliation, and disparate impact.  Plaintiff complained of the following acts of

discrimination: (1) Defendant did not promote him to the position of Team Leader in

August of 2005 and promoted less qualified Caucasian employees, and (2) Defendant did

not promote him to the rank of Lieutenant in February of 2006 and promoted less

qualified Caucasian employees.  Plaintiff also complained of retaliation and disparate

impact.  Plaintiffs sought a remedy for the alleged race discrimination pursuant to section

1983 and Title VII.  Plaintiff also sought a remedy for retaliation and disparate impact

pursuant to Title VII.

## V. DISCUSSION

Plaintiff seeks recovery pursuant to section 1983 and Title VII on his race

discrimination claims.  Plaintiff also seeks recovery under Title VII for retaliation and

disparate impact.  The Court will first consider Plaintiff's race discrimination claims.

### A. Alleged Discrimination

Plaintiff argues he was discriminated against on two occasions: (1) on August 23,

2005 when Defendant did not promote him to the position of Team Leader, and (2) on

February 1, 2006, when Defendant did not promote him to the rank of Lieutenant.  The

Court concludes that no reasonable fact finder could find Plaintiff has established a *prima*

*facie* case on either claim.  Therefore, Defendant is due to be granted summary judgment

on Plaintiff's race discrimination claims

Plaintiff seeks recovery pursuant to Title VII and section 1983.  In this Circuit,

Title VII and section 1983 claims have the same legal elements when the claims are based

on the same set of facts.  *See, e.g.*, *Patterson v. McLean Credit Union*, 491 U.S. 164

(1989); *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008); *see also*

*Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805-806 (11th Cir. 1995).  Because

8

Plaintiff's claims are based on the same facts, the Court's discussion of Plaintiff's discrimination claims are the same whether the Court is considering Plaintiffs claims pursuant to Title VII or section 1983.

An employee bringing a claim under Title VII must initially establish a *prima facie* case of discrimination through one of three methods: by presenting direct evidence of discriminatory intent, presenting circumstantial evidence of discrimination by satisfying the analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and its progeny, or by introducing statistical evidence of discrimination. *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1556 (11th Cir. 1995). Because Plaintiff has presented neither appropriate statistical evidence, nor direct evidence, in support of his claims of discrimination, the Court will address only Plaintiffs' circumstantial evidence.

To establish a discrimination claim by circumstantial evidence using the *McDonnell Douglas* framework, the employee has the initial burden of showing, by a preponderance of the evidence, a *prima facie* case of the proscribed practice. *Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied,* 488 U.S. 1004 (1989). The essence of the *prima facie* case is that the employee presents circumstantial evidence sufficient to generate a reasonable inference by the fact finder that the employer used prohibited criteria in making an adverse decision about the employee. If established, the *prima facie* case raises a rebuttable presumption that the employer is liable to the employee. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981).

9

"Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff

establish facts adequate to permit an inference of discrimination." *Holifield v. Reno,* 115

F.3d 1555, 1562 (11th Cir. 1997).

The Eleventh Circuit Court of Appeals has repeatedly emphasized that the

requisite showings that make up a *prima facie* case are not meant to be rigid or inflexible.

*See, e.g., Schoenfeld v. Babbitt,* 168 F.3d 1257, 1268 (11th Cir. 1999) (collecting cases).

> In cases where the evidence does not fit neatly into the classic
> prima facie case formula, for example, [the Eleventh Circuit
> has] stated that "[a] prima facie case of disparate treatment
> can be established by any 'proof of actions taken by the
> employer from which we infer discriminatory animus because
> experience has proved that in the absence of any other
> explanation it is more likely than not that those actions were
> bottomed on impermissible considerations.'"

*Id.* at 1268 (citing *Hill v. Metro. Atlanta Rapid Trans. Auth.,* 841 F.2d 1533 (11th Cir.

1988), *modified,* 848 F.2d 1522 (11th Cir. 1988) (quoting *Furnco Constr. Corp. v.

Waters*, 438 U.S. 567, 576 (1978))).

Once a plaintiff establishes the requisite elements of the *prima facie* case, the

defendant has the burden of producing a legitimate, non-discriminatory reason for the

challenged employment action. *See, e.g., Holifield v. Reno,* 115 F.3d at 1564 (citing

*Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)). The employer's burden is

"exceedingly light." *Holifield,* 115 F.3d at 1564. This burden is one of production, not

persuasion and consequently, the employer need only produce evidence that could allow a

rational fact-finder to conclude that the challenged employment action was not made for a

discriminatory reason. *See, e.g., Davis v. Qualico Miscellaneous, Inc.,* 161 F. Supp. 2d 1314, 1321 (M.D. Ala. 2001).

If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination. *See, e.g., Holifield,* 115 F.3d at 1565; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (plaintiff "has the opportunity to discredit the defendant's proffered reasons for its decision"). Thus, once the employer articulates a legitimate, non-discriminatory reason, the burden returns to the employee to supply "evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis,* 161 F. Supp. 2d at 1322 (citing *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256; *Combs,* 106 F.3d at 1528. A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

To make out a *prima facie* case of racial discrimination in promotion under Title

VII, a plaintiff must show (1) he belongs to a protected class; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) his employer promoted equally or less qualified employees outside his class.  *See Wilson v. B/E/ Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).  Defendant does not contend that Plaintiff is not a member of a protected class.  Defendant argues that Plaintiff cannot establish a *prima facie* case of race discrimination because Plaintiff was not qualified for the positions and Defendant did not promote equally or less qualified employees outside Plaintiff's class.  The Court agrees.

### 1. August 23, 2005 Team Leader Promotion (Count I)

Plaintiff argues Defendant unlawfully discriminated against him on August 23, 2005 when Defendant did not promote him to the position of Team Leader.  In particular, Plaintiff alleges that the Team Leader exam was unlawful because it was racially discriminatory.  Defendant, in response, argues that it used the Team Leader exam to screen for qualified candidates and that it is industry practice to use a written exam in promotion procedures.

#### a. *Prima facie* case

The parties do not dispute that Plaintiff is a member of a protected class and that Defendant rejected Plaintiff's application for the Team Leader position.  To establish a *prima facie* case, therefore, Plaintiff must demonstrate that he was qualified for the Team Leader position and that Defendant promoted an equally or less qualified employee

12

outside his class.  Courts focus on the employer's requirements when considering whether an individual is qualified for the promotion at issue.  *See e.g., Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) (stating "federal courts do not sit to second-guess the business judgment of employers"); *Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1187 (11th Cir. 1984) (holding an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason").  An employee's expectations do not establish requisite qualifications.  *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1255 (11th Cir. 2000) (finding that employee's opinion that she is more qualified that other candidate "is insufficient to raise a genuine issue of fact"); *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (explaining that a plaintiff's "opinion, without more, is not enough to establish a *prima facie* case" of discrimination); *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1165 (11th Cir. 2006) (noting that the plaintiff's beliefs that his qualifications were superior are insufficient).  Defendant required Team Leader candidates to score a minimum of seventy points on the Team Leader Exam in order to proceed with the application process.  While Plaintiff was eligible to sit for the Team Leader exam, he was not qualified for the position because he did not score seventy points on the exam.  Therefore, no reasonable fact finder could conclude that Plaintiff was qualified for the position.

Even assuming that Plaintiff was qualified to be a Team Leader, he cannot

establish the fourth element of a *prima facie* case because he cannot show that Defendant promoted an equally or less qualified employee outside his class. To demonstrate this element, a plaintiff must show that the disparities in qualifications are of "such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *See Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006) (per curiam). In other words, a comparator is an employee "similarly situated [to the plaintiff] 'in all relevant respects.'" *Wilson,* 376 F.3d at 1091.

Here, a Caucasian male, Allen, also failed to score seventy points on the Team Leader exam. Like Plaintiff, Allen did not progress to the next stage of the promotional process. Plaintiff has not identified any comparator for the Team Leader promotion. Plaintiff also failed to present evidence that no reasonable person could have selected Defendant's choice for Team Leader, David Hines, over Plaintiff. Because Plaintiff did not demonstrate he was qualified and did not identify a similarly situated comparator, no reasonable fact finder could find that Plaintiff has established a *prima facie* case of race discrimination.[1]

## 2. February 1, 2006 Lieutenant Reclassification (Count II)

---

[1]Defendant has also presented evidence that it had a legitimate, non-discriminatory reason for not promoting Plaintiff to Team Leader: Plaintiff failed to score a seventy on the Team Leader exam.

Plaintiff argues Defendant unlawfully discriminated against him on February 1, 2006, when Defendant did not promote him to the rank of Lieutenant. Plaintiff defines Defendant's reclassification as a promotion; Defendant claims it was an administrative renaming. Regardless of the parties' labels, the question before this Court is whether Defendant unlawfully discriminated against Plaintiff when it did not make Plaintiff a Lieutenant on February 1, 2006.[2]

### a. *Prima facie* case

In order to establish a *prima facie* case of racial discrimination in promotion, Plaintiff must first show that he was qualified for the promotion. Plaintiff argues that he was qualified for the rank of Lieutenant. In support of this conclusion, Plaintiff offered affidavits from other employees who stated that he met the requisite qualifications. However, as discussed with respect to the Team Leader promotion, the Court must focus the *employer's* requirements when determining whether an individual is qualified for a promotion. *See* Section V.A.1.a. The opinions of Plaintiff and other employees are not probative. Defendant contends that Plaintiff was not qualified for a Lieutenant promotion because Plaintiff was not a Team Leader in February of 2006. The record is clear that

---

[2]Plaintiff's main argument is that Defendants created the Team Leader position to circumvent the Settlement Agreement by promoting Caucasians to Lieutenant positions without outside assessment. Defendant counters that the reclassification did not violate the Settlement Agreement because the Settlement Agreement had expired. The question whether Defendant violated the Settlement Agreement is not before this Court. Instead, the Court must determine whether Defendant unlawfully discriminated against Plaintiff when it did not promote Plaintiff to Lieutenant on February 1, 2006.

Plaintiff was not a Team Leader when Defendant reclassified the Team Leaders as Lieutenants.  Because Plaintiff was not qualified for the promotion, no reasonable fact finder could find that Plaintiff has established a *prima facie* case.[3]

**B. Plaintiff's Claim of Alleged Retaliation (Count IV)[4]**

In his Complaint, Plaintiff alleges that Defendant unlawfully retaliated against him for opposing unlawful employment practices pursuant to Title VII.  Retaliation claims also require analysis under the *McDonnell Douglas* shifting framework.  *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).  Under this framework, the plaintiff has the initial burden of showing, by a preponderance of the evidence, a *prima facie* case.  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  Once the plaintiff establishes a *prima facie* case, the defendant has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).  If the defendant produces such a reason, then the plaintiff has the ultimate burden of proving the reason to be a pretext for unlawful retaliation.  *Crawford v. Carroll,* 529 F.3d 961, 975 (11th Cir. 2008).

---

[3]Plaintiff also cannot establish the fourth element of the *prima facie* case because Plaintiff cannot show that Defendant promoted an equally or less qualified employee outside his class.  On February 1, 2006, Defendant reclassified thirteen Team Leaders as Lieutenants.  Plaintiff was not a Team Leader in February of 2006.  No one except the Team Leaders became Lieutenants.  Defendant, therefore, only promoted employees who were more qualified than Plaintiff.  In addition, Defendant proffered evidence that its legitimate, non-discriminatory reason for denying Plaintiff the rank of Lieutenant was that Plaintiff was not a Team Leader in February of 2006.

[4]In an order dated December 2, 2008 (Doc. #114), the Court dismissed Count III pursuant to a joint Stipulation for Dismissal (Doc. #95).

### 1. *Prima facie* case

To establish a prima facie case of retaliation under Title VII, an employee must show: (1) he engaged in protected activity; (2) his employer was aware of that activity; (3) he suffered adverse employment action; and (4) there was a causal link between his protected activity and the adverse employment action. *Maniccia v. Brown,* 171 F.3d 1364, 1369 (11th Cir. 1999) (citing *Little v. United Tech.,* 103 F.3d 956, 959 (11th Cir. 1997)).

Defendant contends that Plaintiff has not established the fourth element of the *prima facie* case – the causal link between the protected activity and the adverse employment action.  Thus, this Court need not address whether Plaintiff's actions constitute protected activity; whether his employer knew of her protected activity; or whether he suffered an adverse employment action.  Instead, the Court will focus its inquiry on the causal link element.

"The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'"  *Pennington*, 261 F.3d at 1267 (citations omitted).  One common method of establishing the causal link element with circumstantial evidence is close temporal proximity between the adverse employment action and the protected activity.  However, where there is significant delay between the protected conduct and the allegedly retaliatory acts, the timing of the events does not constitute circumstantial evidence of

causation. *See, e.g., Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (citing with approval several court of appeals decisions for the proposition that a three to four month gap is insufficient to establish the causal relation prong in a retaliation case); *Wascura v. City of South Miami,* 257 F.3d 1238, 1244-45 (11th Cir. 2001) (While a close temporal proximity between two events may support a finding of a causal connection between those two events, the three and one-half month period between plaintiff's protected conduct and the adverse employment action challenged does not, standing alone, establish a causal connection); *Keel v. United States Dep't of Air Force,* 256 F. Supp. 2d 1269, 1291 (M.D. Ala. 2003) (more than seven month gap between protected conduct and allegedly retaliatory conduct was insufficient as a matter of law to establish the causation element of the *prima facie* case of retaliation); *Gaddis v. Russell Corp.,* 242 F. Supp. 2d 1123, 1146-47 (M.D. Ala.)*, aff'd without opinion,* 88 Fed. App. 385 (11th Cir. 2003) (granting employer summary judgment on three of plaintiff's retaliation claims because plaintiff was unable to establish the requisite causal connection between her protected conduct and her adverse employment actions where lapses of time six months or longer existed between the protected conduct and the adverse employment actions).  In addition to temporal proximity, a plaintiff must also establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action to satisfy the "causal link" prong of a *prima facie* retaliation case. *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) (citing

18

*Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993)).  The Court will first address Plaintiff's retaliatory claim with respect to the Team Leader promotion.  It will then discuss Defendant's alleged retaliation in denying Plaintiff the rank of Lieutenant.

### a. Alleged Retaliation During Team Leader Promotion

#### i. *Prima Facie* Case

Plaintiff claims that Defendant unlawfully retaliated against him when Defendant did not promote him to Team Leader on August 23, 2005 because he was a party to the Settlement Agreement.  Plaintiff was a party to the Settlement Agreement in 1991.  He was denied a Team Leader position fourteen years later in 2005.  No reasonable fact finder could find that Plaintiff established a causal link between the Settlement Agreement and the Team Leader promotion because the events occurred more than a decade apart.  Therefore, Plaintiff cannot establish a *prima facie* case of retaliation for the Team Leader promotion.[5]

### b. Alleged Retaliation During Lieutenant Reclassification

#### i. *Prima Facie* Case

Plaintiff also alleges that Defendant unlawfully denied him the rank of Lieutenant on February 1, 2006 because he filed a Charge of Discrimination with the EEOC in

---

[5]Even if Plaintiff could establish a prima facie case, Defendant proffered that its legitimate non-discriminatory reason for denying Plaintiff a Team Leader position was that Plaintiff did not score seventy points on the Team Leader exam. Plaintiff did not offer evidence that Defendant's proffered reason was pretextual.

January of 2006.  Plaintiff filed the charge on January 8, 2006.  On February 1, 2006,

Defendant did not promote Plaintiff to Lieutenant.  Because Plaintiff filed the charge

shortly before Defendant awarded the position to other employees, Plaintiff has satisfied

the temporal proximity requirement of causal link prong.  To satisfy the causal link prong,

however, Plaintiff must also demonstrate that Defendant was actually aware of the

Charge of Discrimination at the time Defendant denied Plaintiff the rank of Lieutenant.

Plaintiff did not offer any evidence that Defendant was aware in February of 2006 that he

had made a complaint to the EEOC.  Therefore, no reasonable fact finder could find that

Plaintiff has established a *prima facie* case of retaliation with respect to the Lieutenant

reclassification.

### ii.  Legitimate Non-Discriminatory Reason

Assuming, *arguendo*, that Plaintiff has satisfied the elements of a *prima facie*

retaliation case with respect to the Lieutenant reclassification, Plaintiff's claim still fails

under the *McDonnell Douglas* framework.  Once a plaintiff has established a *prima facie*

case of retaliation, the defendant then has the burden of producing a legitimate, non-

discriminatory reason.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.

1997).  Defendant has presented evidence of a legitimate non-discriminatory reason for

denying Plaintiff the rank of Lieutenant on February 1, 2006: Plaintiff was not a Team

Leader.  All other employees that Defendant reclassified were Team Leaders, and one

employee who became a Lieutenant was an African-American male.

### iii. Pretext

Once the employer meets its burden of production by proffering a legitimate, non-discriminatory reason, the court's inquiry "proceeds to a new level of specificity in which the plaintiff must show that the proffered reason really is a pretext." *Equal Employment Opportunity Comm'n v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1272-73 (11th Cir. 2000). To establish pretext, Plaintiff must demonstrate that the proffered reason was not the true reason for the retaliation "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2005). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it ... [q]uarreling with that reason is not sufficient." *Wilson*, 376 F.3d at 1088 (citation omitted). Therefore, "to avoid summary judgment [the plaintiff] must introduce *significantly probative evidence* showing that the asserted reason is merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1228 (11th Cir. 1993) (emphasis added). The ultimate burden of persuading the trier of fact that the employer unlawfully retaliated against the employee remains with the plaintiff. *Crawford v. Carroll* 529 F.3d 961, 975 (11th Cir. 2008).

In *Bass v. Bd. of County Commr's*, F.3d 1095 (11th Cir. 2001), the Eleventh Circuit stated that the employer's failure to "follow its own normal hiring procedures may

be evidence of pretext." *Id.* at 1008.  If the employer's explanation is inconsistent with the description of the promotion process, then evidence of pretext might exist.  *Hill v. Seaboard Coast Line R.R.*, 885 F.2d 804, 810 (11th Cir. 1989).  However, "courts 'are not in the business of adjudging whether employment decisions are prudent or fair.'"  *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) (quoting *Deines v. Texas Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)).  Instead, the court's "sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.  *Id.*

Here, Plaintiff argues that Defendant's alleged violation of the Settlement Agreement proves pretext for unlawful retaliation. The record establishes that Defendant reclassified thirteen Team Leaders as Lieutenants only after the Team Leaders petitioned Defendant for the change.  Defendant's proffered reason for denying Plaintiff the rank of Lieutenant in February of 2006 is that Plaintiff was not a Team Leader at that time.  No reasonable fact finder could be persuaded that a discriminatory reason more likely motivated the employer to deny Plaintiff the promotion, especially because one Team Leader that Defendant promoted was an African American male.  Therefore, Plaintiff has not satisfied his burden of showing that the proffered reason was a pretext for retaliation.

## C. Plaintiff's Claim of Alleged Disparate Impact (Count V)

Plaintiff alleges that Defendant's employment practices are unlawful under Title VII because the practices have a substantial adverse impact on a protected group.  In

order to state a *prima facie* case of disparate impact racial discrimination under Title VII, an employee must establish that (1) there is a significant statistical disparity among members of different racial groups; (2) there is a specific, facially-neutral employment policy or practice; and (3) there is a causal nexus between the specific policy or practice and the statistical disparity. *Cooper*, 390 F.3d at 724; *Joe's Stone Crab, Inc.*, 220 F.3d at 1265. "[T]he plaintiff's burden in establishing a *prima facie* case goes beyond the need to show that there are statistical disparities in the employer's work force." *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 994 (1988). "[T]he plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.... [S]tatistical disparities must be sufficiently substantial that they raise such an inference of causation." *Id*. at 994-95.

As a threshold matter, the court must determine whether the plaintiff has submitted sufficient proof of a statistically significant disparity. *Albemarle Paper v. Moody*, 422 U.S. 425, 427 (1975). There is no set mathematical standard that a plaintiff must meet in order to show significant disparate impact. *See Richardson v. Lamar County Bd. of Educ.*, 729 F. Supp. 806, 817 (M.D. Ala.1989), *aff'd*, 935 F.2d 1240 (11th Cir. 1991) (citing *Moore v. Southwestern Bell Tel. Co.*, 593 F.2d 607, 608 (5th Cir.1979)). Various formulas can be used to measure the degree of impact in a specific case, including statistical proof in the form of selection rates, pass/fail comparisons,

population/workforce comparison, and regression analyses. *See, e.g., Teamsters v. U.S.*, 431 U.S. 324, 339 (1977) (using population/workforce comparison); *Alexander v. Fulton County*, 207 F.3d 1303, 1372 (11th Cir. 2000) (using comparison between racial composition of sheriff's department and general demographics of the surrounding area). Whatever the form, a plaintiff's statistical evidence must be sufficient to show significant disparity among members of different groups. *See, e.g., Joe's Stone Crab, Inc.*, 220 F.3d at 1272 (finding gross statistical disparity between the percentage of female food servers in the Miami Beach community (31.9%) and the percentage of female food servers working at Joe's (0%)); *Garner v. Runyon*, 769 F. Supp. 357, 360 (N.D. Ala. 1991) (holding that a pool of four African American applicants is "scant statistical evidence" and insufficient to show statistical disparity); *Sims v. Montgomery County Com'n*, 873 F. Supp. 585, 600 (M.D. Ala. 1994) (finding sufficient evidence of adverse impact by looking at a fifteen year period in which employer's facially neutral policy was in place). The United States Supreme Court has indicated that "small or incomplete data sets" are grounds for challenging statistical evidence. *Watson*, 487 U.S. at 996-97. One district court found that a statistical pool of two African American test takers was too shallow for a disparate impact analysis. *Nash v. Consolidated City of Jacksonville*, 895 F. Supp. 1536, 1543 (M.D. Fla. 1995).

Here, Plaintiff has not identified a specific employment practice that caused statistically significant discriminatory impact. Assuming, however, that Plaintiff alleged

the Team Leader exam had a disparate impact on African Americans, Plaintiff has not produced competent evidence which shows that the Team Leader exam disproportionately affected African American employees.  Indeed, the Court does not have any statistical data before it.  Only six applicants took the Team Leader exam and Plaintiff was the only African American test-taker.  Therefore, no reasonable fact finder could find that Plaintiff has established a *prima facie* case of disparate impact because he has not shown a significant statistical disparity among members of different racial groups.[6]

## D. Defendant's Motion to Strike

Plaintiff submitted several affidavits in support of his Opposition to Summary Judgment (Doc. # 97).  Before the Court is Defendant's Motion to Strike Affidavit and Portions of Affidavit Submitted in Opposition to Motion for Summary Judgment (Doc. #100) filed on October 14, 2008.  Defendant argues that the Court should strike portions of Plaintiff's affidavit and the affidavits of Gerald Stephens, Eddie Ogletree, and William Felton in their entirety because the affidavits are not based on personal knowledge and constitute hearsay.  The Court will address each affidavit in turn.

---

[6]The Court is aware of a case from the Middle District of Florida where a plaintiff established a *prima facie* case of disparate impact using non-statistical evidence of past discrimination.  *Nash v. Consolidated City of Jacksonville*, 895 F. Supp. 1536, 1543 (M.D. Fla. 1995).  In that case, the record reflected a nine-year history of discrimination through the use of promotional exams.  Here, the Plaintiff has not presented the Court with evidence of past promotional exams that resulted in racial discrimination.

**1. Eddie Ogletree and Gerald Stephens's Affidavit Testimony Regarding Plaintiff's Qualifications**

Defendant argues that the testimony in Eddie Ogletree and Gerald Stephens's affidavits must be stricken because it is conclusory and because it is based on their subjective evaluations of Plaintiff's performance.  An affidavit submitted in opposition to a motion for summary judgment must comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure.  Rule 56(e) states that affidavits submitted in opposition to a motion for summary judgment, such as the affidavit at issue here,

> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein.

Fed. R. Civ. P. 56(e).  The requirements of Rule 56 make it plain that affidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper.  *See, e.g., Thomas v. Ala. Council on Human Relations, Inc.,* 248 F. Supp. 2d 1105, 1112 (M.D. Ala. 2003); *Story v. Sunshine Foliage World, Inc.,* 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000).  *Accord, Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000).  Affidavits which fail to meet the standards set forth in Rule 56(e) may be subject to a motion to strike.  *Givhan v. Electronic Eng'rs, Inc.,* 4 F. Supp. 2d 1331, 1334 (M.D. Ala. 1998).  However, if an affidavit contains some improper material, the court need not strike the entire affidavit, rather it may strike or disregard the improper portions and consider the remainder of the affidavit.  *Id.* at 1334 n.2.

26

Here, Defendant argues that Eddie Ogletree and Gerald Stephens's affidavit testimony must be stricken because they contain "beliefs" rather than appropriate testimony based upon "personal knowledge" as Rule 56(e) requires. The Court agrees in part and disagrees in part. With respect to Plaintiff's qualifications, the affidavits make plain that the testimony is based on personal knowledge and includes specific facts the affiants observed during their employment with Defendant. Therefore, Defendant's motion to strike portions of the affidavits addressing Plaintiff's qualifications is due to be DENIED. However, the testimony addressing whether Defendants had a legitimate reason to deny Plaintiff's promotions are problematic conclusory statements that essentially constitute legal arguments. Consequently, Defendant's motion to strike portions of Eddie Ogletree and Gerald Stephens's affidavit testimony is due to be GRANTED to the extent their testimony claims Defendant had no legitimate reason not to promote Plaintiff.

**2. William Felton's Affidavit Testimony Regarding Defendant's Work Environment**

Defendant argues that the testimony in William Felton's ("Felton's") affidavit must be stricken because the affidavit contains statements that constitute hearsay. The Court has separated Felton's affidavit testimony into two parts and will address each individually.

### a. Promotion Rumors

Felton's affidavit testimony claims he heard rumors that the promotion process at the fire station was "fixed."  Felton also alleges that Ellis Mitchell told him that he would have trouble because Caucasian firefighters did not want to "house" in the dormitory with an African American man.  These statements constitute hearsay pursuant to Federal Rule of Evidence 801(c) because they are offered to prove the truth of the matter asserted. Also, these statements do not constitute admissions of a party opponent pursuant to Federal Rule of Evidence 801(d)(2) because Plaintiff did not establish that the declarant is Defendant's "agent or servant" or when the declarant made the statement.  *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 557 (11th Cir. 1998) (holding that "a statement by [a] party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship...is deemed an admission by a party opponent and is excluded from the definition of hearsay").   For these reasons the Court finds that Defendant's motion to strike from Felton's affidavit the rumors and statements allegedly made to Felton by Ellis Mitchell is due to be GRANTED.

### b. Use of N-Word

Felton's affidavit testimony includes statements that his co-workers regularly used the N-word.  Defendant argues that these statements constitute inadmissible hearsay and must be stricken from Felton's affidavit.  The Court finds that this argument is untenable.

These statements are not offered in evidence to prove the truth of the matter asserted in the statements, but rather they are offered to show the effect that the statements had on Felton after he heard them.  Consequently, they are not hearsay as defined by Federal Rule of Evidence 801(c).  For this reason, the Court finds that Defendant' motion to strike from Felton's affidavit the alleged use of the N-word is due to be DENIED.

### 3. Plaintiff's August 24, 2008 Affidavit Testimony Regarding Racial Comments and Student Firefighters

Defendant argues that Plaintiff's affidavit testimony dated August 24, 2008 must be stricken because it contains hearsay and speculative evidence.  Plaintiff's claimed that he "has endured numerous instances of negative comments related to [his] race."  As discussed with respect to Felton's affidavit testimony, the negative comments are not offered in evidence to prove the truth of the matter asserted in the statements, but rather they are offered to show the effect that the statements had on Plaintiff.  Therefore, they are not hearsay as defined by Federal Rule of Evidence 801(c) and Defendant's motion to strike them from Plaintiff's affidavit is due to be DENIED.

Plaintiff's affidavit testimony also includes statements that he will soon be competing with Caucasian student firefighters for promotions.  Defendant argues that these statements must be stricken because they are irrelevant.  Pursuant to Federal Rule of Evidence 401, "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence." Fed. R. Evid. 401.
Pursuant to Federal Rule of Evidence 402, evidence which is not relevant is not
admissible. Plaintiff's statement that he will soon be competing with Caucasian student
firefighters is irrelevant because future promotions are not of consequence to the
determination of this action. Consequently, Defendant's motion to strike portions of
Plaintiff's August 24, 2008, affidavit testimony is due to be GRANTED to the extent the
testimony discusses Defendant's future potential hires.

## VI. CONCLUSION

For the reasons set forth in this Memorandum Opinion and Order, the Court finds
that Defendant is entitled to summary judgment on all of Plaintiff's claims. Accordingly,
it is hereby ORDERED as follows:

(1) Defendant's Motion for Summary Judgment (Doc. # 91) is GRANTED;

(2) All of Plaintiff's claims are DISMISSED WITH PREJUDICE;

(3) Defendant's Motion to Strike (Doc. #100) is DENIED in part and GRANTED
in part;

(4) The trial in this matter is CANCELLED;

(5) The Court will enter a separate final judgment in favor of Defendant consistent
with this Memorandum Opinion and Order.

DONE this the 19th day of December, 2008.

_____
        /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE